**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
IN ADMIRALTY**

CANDYCE S. HOGLAN, as personal representative of the Estate of Alice Hoglan; CANDYCE S. HOGLAN, as personal representative of the estate of MARK KENDALL; KUI LIONG LEE, as personal representative of the estate of SIEW NYA ANG; KIU LIONG LEE; WINNEE LEE; JEANEE LEE; ARLINE PEABODY-BANE; BRIAN MAJOR; BRENDA JOBE; JOSEPH CARPENETO as personal representative of the Estate of JOYCE ANN CARPENETO; JOSEPH CARPENETO; DIAN DEMBINSKI as personal representative of the Estate of SANDRA WRIGHT CARTLEDGE; DIAN DEMBINSKI; MELANIE BUCHMAN as personal representative of the estate of LORETTA HAINES; STEPHEN BRADISH; GERALDINE DEBORAH SPAETER; LYNNE DUNN as personal representative of the estate of JACK BRADISH A/K/A JOHN BRADISH; NICHOLAS CHIRCHIRILLO; MICHAEL CHIRCHIRILLO; JOAN ANN COALE; LESLIE COALE BROWN; DANIEL D. COFFEY as personal representative of the estate of JEANNETTE COFFEY; DANIEL D. COFFEY as personal representative of the estate of DANIEL F. COFFEY, JR.; COLLEEN MCDONALD; KEITH BRADKOWSKI as personal representative of the estate of BEVERLY SUTTON; CAROLYN SUTTON; VICKI LYNN MICHEL; KEITH BRADKOWSKI; KATHRYN COLLMAN; CHARLES GENGLER; STEVEN GENGLER; SUSAN BOHAN; TANYA DAVIS as personal representative of the estate of WAYNE T. DAVIS; TANYA DAVIS; GABRIELLE HUNTER DAVIS; MALACHAI ROARKE DAVIS; NOVERTA DAVIS-DEAN; JASON DIEHL; JEANNETTE DIEHL BERGQUIST; CIRILO FERNANDEZ; TIMOTHY REGAN as personal representative of the estate of EMMA FERNANDEZ REGAN; RICHARD FERNANDEZ; RENEÉ L. GAMBOA; RENEÉ L. GAMBOA as personal representative of the estate of RANULF GAMBOA; MARIA JOULE; RACHEL G. MALUBAY; JOHN HALLER as

Case No. 1:24-mc-21628

personal representative of the estate of JAMES BOND GODSHALK; JANE G. HALLER; ALEESE M. HARTMANN; KATHRYN GRAZIOSO; KRISTEN GRAZIOSO; MICHAEL GRAZIOSO; CAROLEE AZZARELLO as personal representative of the estate of SANDRA GRAZIOSO; CAROLEE AZZARELLO; KAREN VENTRE; KRYSTY GRAZIOSO; DEBORAH GRAZIOSO as personal representative of the estate of TIMOTHY GRAZIOSO; DEBORAH GRAZIOSO; LAUREN GRAZIOSO; BRIANA GRAZIOSO; KAREN VENTRE; KRYSTY GRAZIOSO; DOUGLAS HALVORSON; KATE HALVORSON as personal representative of the estate of EVELYN HALVORSON; KATE HALVORSON; MICHAELA HAVLISH; SEAN BITTERMAN; LEA BITTERMAN; DERRICK HOBIN; MELODIE HOMER as personal representative of the estate of LEROY W. HOMER, JR.; MELODIE HOMER; LAUREL HOMER; JU-HSIU JIAN A/K/A CONNIE JIAN as personal representative of the estate of HWEIDAR JIAN; JU-HSIU JIAN A/K/A CONNIE JIAN; WILLIAM JIAN; KEVIN JIAN; CANDY MOYER as personal representative of the estate of JOHN R. JONES; AUDREY R. JONES; ROBERT A. JONES; CANDY JONES MOYER; DINA LAFOND; ANITA KORSONSKY; PATRICIA CALOIA as personal representative of the estate of EMILY LAVELLE; PATRICIA CALOIA; BARBARA DZIADEK; KATHLEEN PALACIO; PAUL LAVELLE; BARBARA LURMAN as personal representative of the estate of LEON LEBOR; BARBARA LURMAN; JOY KAUFMAN A/K/A RINA KAUFMAN as personal representative of the estate of BESSIE LEBOR; JOY KAUFMAN A/K/A RINA KAUFMAN; STEPHANIE GIGLIO; MICHAEL A. LOGUIDICE as personal representative of the estate of CARMELLO JOSEPH LOGUIDICE; JOSEPH LOSTRANGIO, JR.; CATHRYN LOSTRANGIO; DIANE LOSTRANGIO as personal representative of the estate of JAMES LOSTRANGIO; KAREN LUNDER as personal representative of the estate of CHRISTOPHER E. LUNDER; KAREN LUNDER; ERICH MAERZ;

RAMON MELENDEZ, JR.; TYLER MELENDEZ; RICKY MELENDEZ; JESSE MELENDEZ; FLORENCE ROSARIO; MARGARET MONTANEZ; PETER C. MILANO; JESSICA MILANO STARKS; ALFRED MILANO; FRANK MILANO; MAUREEN RACIOPPI; THOMAS MILANO; PHILOMENA MISTRULLI as personal representative of the estate of JOSEPH D. MISTRULLI; PHILOMENA MISTRULLI; ANGELA MISTRULLI; JOSEPH MISTRULLI; MARYANN MISTRULLI-ROSSER; JOHN MISTRULLI AND MARIA LAMBERT as co-executors of the estate of ANNE MISTRULLI; JOHNNY MISTRULLI; MARIA LAMBERT; JASON RUBEN MORENO F/K/A ROLANDO RUBEN MORENO; LEIANA MORENO; NOELIA MORENO; AMY MARTINEZ as personal representative of the estate of LOUIS NACKE; AMY MARTINEZ; ERIC NUNEZ; NEAL GREEN; THERESA PAPASSO; SALVATORE PAPASSO; VINCENT PAPASSO; JOEL R. PERRY as personal representative of the estate of JAMES LESLIE PERRY; JOEL R. PERRY; JANICE PERRY MONTOYA; ANTHONY M. HOFFMAN, GENERAL ADMINISTRATOR, as personal representative of the estate of CLAUDIA STALLWORTH; REGINALD SIMPSON; ROOSEVELT STALLWORTH; CARL STALLWORTH; CYNTHIA WATTS; ANGELIA STALLWORTH-BLUNT; CHRISTIAN B. STALLWORTH F/K/A BRIAN CHRISTIAN; AMANDA ROGERS; GARY REISS; ADAM REISS; JORDAN REISS; JONATHAN REISS; JENNIFER REISS; DIANA DIAZ as personal representative of the estate of CARMEN ROMERO; DIANA DIAZ as personal representative of the estate of ISAAC ROMERO; DIANA DIAZ; LOREN ROSENTHAL as personal representative of the estate of EVAN ROSENTHAL; LOREN ROSENTHAL as personal representative of the estate of SETH ROSENTHAL; AUDREY MODEL as personal representative of the estate of LEONARD ROSENTHAL; AUDREY MODEL as personal representative of the estate of FLORENCE ROSENTHAL; AUDREY MODEL; VICTOR

SANTILLAN; RAYMOND SANTILLAN; KIRSTEN SARACINI; BRIELLE SARACINI; LORI BRODY; ELLEN SCHERTZER; ROY-YETKUTIEL SHEFI; NAOMI RUTH SHEFI; PATRICIA SLOAN; MATT SLOAN; SARAH FUNK; RAYMOND SMITH as personal representative of the estate of MARION THOMAS; RAYMOND SMITH as personal representative of the estate of DEBORAH SALLAD; CARL SMITH; KEVIN SMITH; KORRY SMITH; TANYA WARREN; LETRICIA SMITH; ELAINE SMITH; CHRISTINE JACKSON; BARBARA HARGROVE; RAYMOND SMITH, JR.; TIMOTHY P. SOULAS, JR.; ANDREW J. SOULAS; CHRISTOPHER SOULAS; MATTHEW SOULAS; NICOLE SOULAS; DANIEL SOULAS; FREDERICK SOULAS; STEPHEN SOULAS; FREDERICK SOULAS, III; DANIEL D. SOULAS; MICHELLE DONLAN; DARREN STEINER; JORDAN STEINER; MEREDITH REVERDITO; ROBERT STEINER as personal representative of the estate of WILMA STEINER; ROBERT STEINER; GEORGE M. STEINER; KATHLEEN STERGIOPOULOS; GEORGE STERGIOPOULOS, JR.; AARON STRAUB; JONATHAN STRAUB; MICHAEL STRAUB; SAMUEL STRAUB; EDWARD STRAUB; STANLEY STRAUB; MATTHEW STRAUB; SALVATORE TINO, JR.; JEFFREY TINO; SALVATORE TINO, III; JOSEPH NICKLO; MELLANIE CHAFE; CHRISTOPHER BARTON; JOHN BARTON; MICHAEL PAIGE; PETER A. MCDERMOTT as personal representative of the estate of JEANNE MCDERMOTT; DEBRA ZEPLIN as personal representative of the estate of MARC SCOTT ZEPLIN; DEBRA ZEPLIN; RYAN ZEPLIN; and ETHAN ZEPLIN,

Plaintiffs,

v.

M/V BLUEFINS; M/V BOCEANICA; M/V B LUMINOSA; M/V BUENO; M/V ADISA; and M/V NOLAN; in rem,

Defendants.

## VERIFIED COMPLAINT

Plaintiffs Candyce S. Hoglan, in her capacity as the Personal Representative of the Estate of Alice Hoglan, and the additional individuals and estates identified in Appendix 1 (collectively, the "Hoglan Plaintiffs"), file this Verified Complaint in rem for declaratory relief, maritime lien, and turnover of Defendants M/V Bluefins, M/V Boceanica, M/V B Luminosa, M/V Bueno, M/V Adisa, M/V Nolan, and allege as follows:

## INTRODUCTION

1.      This is an in rem enforcement proceeding under the Terrorism Risk Insurance Act of 2002 ("TRIA") by the Hoglan Plaintiffs. The Hoglan Plaintiffs are victims and family members of victims of the terrorist attacks on September 11, 2001 and have judgments against, among others, the Islamic Republic of Iran ("Iran"), the Iranian Revolutionary Guard Corps (the "IRGC"), and Hezbollah. The Hoglan Plaintiffs seek to execute against, and assert ownership over, six oil tankers that have been used by Iran, the IRGC, and Hezbollah to smuggle Iranian oil around the world for the purpose of generating revenue to support Iranian and Hezbollah terrorist attacks in violation of United States sanctions.

2.      All of the vessels have been sanctioned by the United States Office of Foreign Assets Control ("OFAC"). All of the vessels are stateless, in that they are not authorized to fly the flag of any nation. The vessels are, therefore, subject to the jurisdiction of United States courts and the laws of the United States.

3.      For decades, the Hoglan Plaintiffs have sought to recover for the losses they and their family members suffered in that tragic attack.

4.      Pursuant to Section 201(a) of TRIA, the Hoglan Plaintiffs are entitled to enforce their judgments against Iran, the IRGC, and Hezbollah by executing on the blocked assets of any

"agency or instrumentality" of Iran.  As alleged below, the six tankers at issue here are both "agencies or instrumentalities" of Iran, the IRGC, the IRGC—Qods Force (the "IRGC-QF"), and Hezbollah and also "blocked assets" for purposes of TRIA.

## PARTIES

**A.    Plaintiffs.**

5.     The names and identities of the Hoglan Plaintiffs are enumerated in Appendix A to this Complaint.  All of the Hoglan Plaintiffs are judgment creditors entitled to unsatisfied compensatory damages against the Judgment Debtors enumerated below.  *See infra* ¶ 8.

6.     Judgments in favor of the Hoglan Plaintiffs were entered by the United States District Court for the Southern District of New York on February 26, 2018 in *Hoglan v. Islamic Republic of Iran*, Nos. 1:11-cv-07550 & 03-md-1570 (S.D.N.Y.).

7.     Plaintiffs have registered their judgment in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1963.

**B.    Judgment Debtors**

8.     The judgment debtors on the judgments held by the Hoglan Plaintiffs are (1) the Islamic Republic of Iran; (2) the Iranian Ministry of Information and Security; (3) the Islamic Revolutionary Guard Corps.; (4) the Iranian Ministry of Petroleum; (5) the Iranian Ministry of Economic Affairs and Finance; (6) the Iranian Ministry of Commerce; (7) the Iranian Ministry of Defense and Armed Forces Logistics; (8) Bank Markazi; (9) the National Iranian Tanker Company; (10) the National Iranian Oil Company; (11) the National Iranian Gas Company; (12) the National Iranian Petrochemical Company; (13) Iran Air; (14) the Ayatollah Ali Hoseni Khamenei; (15) Ali Akbar Hashemi Rafsanjani; and (16) Hezbollah (collectively, the "Judgment Debtors").

9.     After an evidentiary hearing and after receiving evidence, the United States District Court for the Southern District of New York (i) found the Judgment Debtors had provided direct and material support for the terrorist attacks on September 11, 2001; (ii) adjudged them jointly and

severally liable for the Hoglan Plaintiffs' damages; and (iii) entered a final and enforceable judgment against them.

**C.  Defendants**

10.  Defendants (collectively, the "Defendant Vessels" or the "Vessels") are six oil tankers that have been sanctioned and blocked by OFAC for smuggling oil on behalf of Iran.  The nominal owners of the six Defendant Vessels vary, but all of the vessels are owned and/or controlled by Viktor Artemov through a web of companies that are subject to his ownership, control, or direction.

11.  Each Defendant Vessel can be uniquely identified using primarily two authoritative sources.

a.  <u>The International Maritime Organization ("IMO").</u>

i.  The IMO is an agency of the United Nations that is responsible for monitoring and regulating maritime vessels and international shipping practices and policies.  The IMO began operations in 1958, and currently has 175 member States and three associate members.  Both the United States and Iran are IMO members.

ii.  The IMO created and operates a Ship Identification Number Scheme. The numbering scheme is recognized and used by the governments of most States and is considered the best system in the world for uniquely identifying maritime vessels.

iii.  The IMO assigns unique numbers to each (a) maritime vessel, (b) ship owner, (c) ship manager, and (d) ship operator. The label "IMO Number" is often used generically when referring to the unique number the IMO assigns to vessels, ship owners, ship managers, and ship operators.

iv.     The IMO also operates the Global Integrated Shipping Information System ("GISIS"). The GISIS is a database containing basic information relating to each vessel, ship owner, ship manager, and ship operator. For vessels, the GISIS contains information such as the vessel's IMO Number, its registered owner, its current flag, call sign, vessel type, size, and date of build. For ship owners, ship managers, and ship operators, the GISIS contains basic information such as the entities' name, IMO company number, address, country of registration.

v.      The flag State must include the vessel's IMO number on the documentation granting the vessel the right to fly its flag.

vi.     The IMO number associated with a vessel does not change even if the vessel's name, owner, or flag state changes.

b.      <u>Equasis</u>.

i.      Equasis is a joint venture among the United States, the EU Maritime Safety Agency, the United Kingdom, Greece, Brazil, Canada, France, Japan, Norway, Spain, and South Korea. Other governments and organizations of governments contribute information about vessels, ship owners, and ship managers and makes the information publicly available over the Internet.

ii.     The Equasis database includes current and historical information on key characteristics of a vessel, such as the IMO Number, past and current flag States, past and current vessel names, the year in which the ship was built, the type of vessel, the size of the vessel, and the IMO Numbers, names and addresses of the vessel's owners and ship managers, as well as details concerning a vessel's third-party liability insurer.

iii.    The Equasis database is considered the most accurate, current, and frequently updated source of information concerning maritime shipping vessels, ship owners, and ship managers.

12.    Defendant M/V Bluefins ("Bluefins") is a Panamax[1] oil tanker built in 2001 and currently owned by Bluefins Shipping Corp. ("Bluefins Shipping").  Bluefins Shipping is an annulled Marshall Islands corporation.  The ship manager is Harbour Ship Management, Ltd. ("Harbour"), an annulled Marshall Islands corporation.  Bluefins Shipping, Harbour, and thus Bluefins itself, are ultimately controlled by Artemov. Bluefins' IMO Number is 9221657.  Equasis Report on Bluefins, dated April 29, 2024, attached as Exhibit 1; IMO GISIS Report on Bluefins, dated April 29, 2024, attached as Exhibit 2.

13.    Defendant M/V Boceanica ("Boceanica") is a Panamax oil tanker built in 2004 and currently owned by Vista Oceanica Shipping Corp. Vista Oceanica Shipping is an annulled Marshall Islands corporation. The ship manager for Boceanica is Harbour. Vista Oceanica, Harbour, and thus Boceanica itself, are ultimately owned and controlled by Artemov.   Boceanica's IMO Number is 9267132. Equasis Report on Boceanica, dated April 29, 2024, attached as Exhibit 3; IMO GISIS Report on Boceanica, dated April 29, 2024, attached as Exhibit 4.

14.    Defendant M/V B Luminosa ("Luminosa") is a Panamax oil tanker built in 2003 and owned by Vista Luminosa Shipping Corp. Vista Luminosa Shipping is an annulled Marshall Islands corporation. The ship manager for B Luminosa is Harbour. Vista Luminosa, Harbour, and thus B Luminosa itself, are ultimately owned by Artemov.   B Luminosa's IMO Number is

_____

[1] The term "Panamax" refers to the largest size vessel that can transit the Panama Canal. Panamax tankers range in length between 200 and 250 meters (650 and 820 feet) and can carry 350,000 to 500,000 barrels of oil.

9256016. Equasis Report on B Luminosa, dated April 29, 2024, attached as Exhibit 5; IMO GISIS Report on B Luminosa, dated April 29, 2024, attached as Exhibit 6.

15.     Defendant M/V Bueno ("Bueno") is a Panamax oil tanker built in 2005 and owned by Vista De Plata Shipping Corp. Vista de Plata Shipping is an annulled Marshall Islands corporation.  The ship manager for Bueno is Harbour. Vista de Plata, Harbour, and thus Bueno itself, are ultimately owned and controlled by Artemov.   Bueno's IMO Number is 9282443. Equasis Report on Bueno, dated April 29, 2024, attached as Exhibit 7; IMO GISIS Report on Bueno, dated April 29, 2024, attached as Exhibit 8.

16.     Defendant M/V Adisa ("Adisa") is a Very Large Crude Carrier ("VLCC")[2] oil tanker built in 2005 and currently owned by owned by Triton Navigation Corp. ("Triton"). Triton Navigation is an annulled Marshall Islands corporation. The ship manager for Adisa is Thomarose Global Ventures, Ltd., ("Thomarose").  Thomarose is an inactive Nigerian corporation.  Triton Navigation, Thomarose, and thus Adisa itself, are ultimately owned and controlled by Artemov. Adisa's IMO Number is 9304667. Equasis Report on Adisa, dated April 29, 2024, attached as Exhibit 9; IMO GISIS Report on Adisa, dated April 29, 2024, attached as Exhibit 10.

17.     Defendant M/V Nolan ("Nolan") is a VLCC oil tanker built in 2000 and currently owned by Pontus Navigation Corp. ("Pontus"). Pontus Navigations is an annulled Marshall Islands corporation.  The ship manager for Nolan is Thomarose. Pontus Navigation, Thomarose, and thus Nolan itself, are ultimately owned and controlled by Artemov. Nolan's IMO Number is 9179701. Equasis Report on Nolan, dated April 29, 2024, attached as Exhibit 11; IMO GISIS Report on Nolan, dated April 29, 2024, attached as Exhibit 12.

---

[2] The term "Very Large Crude Carrier" refers to oil tankers with a length of approximately 330 meters (1,100 feet). VLCCs can carry approximately two million barrels.

## JURISDICTION AND VENUE

18.     This Court has subject-matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1333(1).  This is a civil case that falls within the admiralty and maritime jurisdiction of the district courts of the United States and is based on an admiralty or maritime claim within the meaning of Federal Rule of Civil Procedure 9(h).

19.     The incidents that form the basis of this Complaint occurred on navigable waters. The Defendant Vessels shipped Iranian oil on behalf of Iran, the IRGC, and Hezbollah by traversing the high seas.  And the Defendant Vessels are presently located on the high seas.

20.     The basis of liability in this action is maritime in character.  Plaintiffs allege that the Defendant Vessels are liable for the judgments held by the Hoglan Plaintiffs because the Defendant Vessels are instrumentalities of a terrorist party in that they performed maritime services for Iran, IRGC, and Hezbollah on navigable waters.

21.     The Defendant Vessels' smuggling activities have a disruptive impact on maritime commerce because they (i) undermined efforts by the United States and the international community to exclude Iran from maritime trade in oil; (ii) involved violations of international law governing maritime commerce, including the requirements of the International Convention for the Safety of Life at Sea ("SOLAS") and law-of-the-flag principles; and (iii) interfere with efforts by the international community and the United States to preserve order on the high seas.

22.     The Defendant Vessels' smuggling activities have a substantial relationship to traditional maritime activity.  Efforts to interdict vessels engaged in smuggling have been part of maritime activity since the earliest days of maritime commerce.  Such efforts implicate traditional maritime concerns with the rights and rules of navigation, which govern the manner, direction, and purposes for which vessels may rightfully move upon navigable waters.

23. The Defendant Vessels are stateless. Therefore, in conformity with international maritime law and practice, United States courts have an obligation to exercise jurisdiction over the Defendant Vessels and apply United States law to their activities.

24. In the alternative, this Court has federal-question jurisdiction under 28 U.S.C. § 1331 because this is a civil case that arises from a law of the United States, namely the Terrorism Risk Insurance Act of 2002.

25. In the alternative, this Court has jurisdiction because each of the Defendant Vessels is engaged in activity George W. Bush, in his capacity as the President of the United States, determined involved activity that presented risk to the national security of the United States and United States courts have jurisdiction over extraterritorial actions that adversely affect the United States national security interests.

26. This is an in rem admiralty proceeding against the Defendant Vessels. In an in rem admiralty proceeding, "the vessel itself [is] the obligor" and claimants may "proceed against it directly," *Crimson Yachts v. Betty Lyn II Motor Yacht*, 603 F.3d 864, 868 (11th Cir. 2010), without the need to establish personal jurisdiction over the owner or manager of the vessel. *See also Detroit Trust Co. v. Barlum S.S. Co.*, 293 U.S. 21, 48 (1934) ("The ship from the moment her keel touches the water … acquires personality; she becomes competent to contract, is individually liable for her obligations, and is responsible for her torts.").

27. This Court has in rem jurisdiction over each Defendant Vessel because Defendants are stateless vessels on the high seas. For purposes of in rem jurisdiction, stateless vessels are deemed to be part of the territory of the United States, subject to United States law, and within the territorial jurisdiction of United States courts.

28.     This Court also has jurisdiction over each Defendant Vessel because their activities substantially and adversely affect the national security of the United States both within its territorial jurisdiction and worldwide.

29.     This Court has constructive possession of each Defendant Vessel because the Defendant Vessels are stateless, their location is known, or can be made known, to the Hoglan Plaintiffs, and the Hoglan Plaintiffs will be able to reduce the Defendant Vessels to their actual control by relying on a favorable judgment issued by this Court.  *See Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278, 1286 (11th Cir. 2017) ("The theory of constructive in rem jurisdiction is well established in admiralty cases.").

30.     For each Defendant Vessel, a substitute for the res exists within the District.  The substitute for the res for each Defendant Vessel consists of satellite photographs and other supporting documentation confirming the location of each Defendant Vessel.

31.     The States that constitute the international community of civilized nations act individually and collectively to assist the United States and its courts with the enforcement of sanctions against Iran and its proxies and with efforts to maintain order on the high seas.

32.     By operating on navigable waters while stateless, the Defendant Vessels have waived and forfeited any right to object to the Court's exercise of in rem jurisdiction over them, and any requirement of actual seizure or arrest.

33.     Venue is proper in this District because the Defendant Vessels are constructively present in the District.

34.     In the alternative, venue is proper in this District under 28 U.S.C. § 1391(b)(3) because there is no district in which venue is otherwise appropriate for this action and the Defendants are within the Court's personal jurisdiction.

## FACTUAL ALLEGATIONS

**I.    PLAINTIFFS ARE ENTITLED TO EXECUTE ON BLOCKED IRANIAN ASSETS**

35.    Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA") provides:

> Notwithstanding any other provision of law, and except as provided in subsection (b), in every case in which a person has obtained a judgment against a terrorist party based on an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which the terrorist party has been adjudged liable.

TRIA § 201(a), Pub. L. No. 107-297, sec. 201(a), 116 Stat. 2322, 2337-40 (2012) (codified at 28 U.S.C. § 1610 note).

36.    Under Section 201(a) of TRIA, victims of terrorism are entitled to execute on the assets of terrorist parties and their agencies and instrumentalities to satisfy any outstanding compensatory damages if three elements are satisfied.  **First**, the Plaintiffs must have obtained a final judgment against a terrorist party on a claim based on an act of terrorism."  **Second**, the asset in question must be a "blocked asset," meaning "any asset seized or frozen by the United States under section 5(b) of the Trading With the Enemy Act (50 U.S.C. App.5(b)) or under sections 202 and 204 of the International Emergency Economic Powers Act (50 U.S.C. § 1701; 1702)."  TRIA § 201(d)(2)(A).  And **third**, the blocked asset must belong to the terrorist party or to an "agency or instrumentality of the judgment debtor."  *Stansell v. Revolutionary Armed Forces of Columbia*, 771 F.3d 713, 726 (11th Cir. 2014).  If these "elements of Section 201(a) [are] satisfied," the blocked assets shall be "'subject to execution'" in satisfaction of the judgment, "'[n]otwithstanding any other provision of law.'" *Weinstein v. Islamic Republic of Iran*, 609 F3d 43, 48 (2d Cir. 2010) (quoting TRIA § 201(a)(2)).

37.     The Hoglan Plaintiffs hold judgments against terrorist parties—including, as relevant here, Iran, the IRGC, and Hezbollah.  TRIA defines "terrorist party" as a "terrorist organization (as defined in section 212(a)(3)(B)(vi) of the Immigration and Nationality Act (8 U.S.C. § 1182(a)(3)(B)(vi))), or a foreign state designated as a state sponsor of terrorism under section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)) or section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. § 2371)."  TRIA § 201(d).

38.     Iran has for many years been designated state sponsor of terrorism under section 6(j) of the Export Administration Act of 1979, 50 U.S.C. App. § 2405(j), and section 620A of the Foreign Assistance Act of 1961, 22 U.S.C. § 2371(b).

39.     The district court in the underlying action found jurisdiction under Section 1605A(a) of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605A, and thus Iran was not immune from jurisdiction in the original proceeding.

40.     The IRGC is a political subdivision of Iran and is, therefore, a state sponsor of terrorism within the meaning of section 6(j) of the Export Administration Act of 1979, 50 U.S.C. App. § 2405(j), and section 620A of the Foreign Assistance Act of 1961, 22 U.S.C. § 2371(b). Separately, on April 8, 2019, President Donald Trump and United States Department of State designated the IRGC a Foreign Terrorist Organization pursuant to sections 212(a)(3)(B)(vi) and 219 of the Immigration and Nationality Act.

41.     The IRGC-QF is a political subdivision of Iran and is, consequently, a state sponsor of terrorism within the meaning of section 6(j) of the Export Administration Act of 1979, 50 U.S.C. App. § 2405(j), and section 620A of the Foreign Assistance Act of 1961, 22 U.S.C. § 2371(b). Separately, the IRGC-QF has been classified as a specifically designated global terrorist

organization ("SDGT") by the United States Department of Treasury since October 25, 2007 and was designated a Foreign Terrorist Organization along with the IRGC on April 8, 2019.

42.     Hezbollah has been designated foreign terrorist organization by the United States Department of State pursuant to section 219 of the Immigration and Nationality Act since October 1997.

43.     The Hoglan Plaintiffs' judgment is based on an act of terrorism committed by Iran, IRGC, and Hezbollah.  As defined by TRIA, the term "act of terrorism" means "(A) any act or event certified under section 102(1)" of TRIA or "(B) to the extent not covered by subparagraph (A), any terrorist activity (as defined in section 212(a)(3)(B)(iii) of the Immigration and Nationality Act (8 U.S.C. § 1182(a)(3)(B)(iii))."

44.     The attacks of September 11 were "terrorist activity" as defined by section 212(a)(3)(B)(iii) of the Immigration and Nationality Act.  Those attacks involved (i) the hijacking of aircraft; (ii) seizing or detaining, and threatening to kill, injure, or continue to detain, other individuals in order to compel a third person to do or abstain from doing an act as an explicit or implicit condition for the release of the individual seized or detained; (iii) the use of explosives or other weapons or dangerous devices other than for mere personal monetary gain with intent to endanger the safety of one or more individuals and to cause substantial damage to property; and (iv) threats, attempts, and conspiracy to do all of the foregoing.

45.     On February 26, 2018, the United States District Court for the Southern District of New York entered a judgment in favor of the Hoglan Plaintiffs and against the Judgment Debtors in the amount of $3,123,947,469.58 in compensatory damages plus interest since entry of the judgment.  Of the original judgment, $3,066,275,119.00 remains outstanding.

II.    **The Defendant Vessels Are Blocked Assets**

46.    The blocked assets in this enforcement proceeding are the six Defendant Vessels: Bluefins, Boceanica, B Luminosa, Bueno, Adisa, and Nolan. On November 3, 2022, OFAC announced that it had imposed sanctions on these Vessels because they were used by an international oil-smuggling network headed by Artemov (the "Network") to help Iran, IRGC-QF, and Hezbollah evade United States sanctions and bring Iranian oil to the global market for the purpose of generating revenue to support terrorist activities around the world.

47.    The United States originally imposed sanctions on Iran in response to the 1979 Iranian Hostage Crisis.

48.    In 1984, the United States designated Iran a state sponsor of terrorism in response to the Iran's prolific support for, and involvement in, acts of international terrorism, including terrorism that adversely impacts United States national security interests. Iran continues to be designated a state sponsor of terrorism today. Its designation as a state sponsor of terrorism imposes a variety of sanctions.

49.    Among other things, sanctions have made it unlawful for anyone subject to the jurisdiction of the United States to do business with Iran or deal with any Iranian companies, people, or products without a license from OFAC.  The sanctions make it unlawful for persons subject to the jurisdiction of the United States to sell, buy, or transport Iranian oil.  These sanctions are important to the United States' national security and play a critical role in the United States' efforts to prevent Iran from financing its support for international terrorism and its nuclear-weapons program by cutting off Iran's ability to generate revenue in the global oil market.

50.    The United States also sanctions persons and companies not subject to United States jurisdiction through "secondary sanctions."  Secondary sanctions apply to persons and

companies who help nations like Iran or terrorist organizations like Hezbollah evade sanctions by facilitating commerce in their goods worldwide.  When a person is subject to secondary sanctions, the United States prohibits anyone subject to United States jurisdiction from doing any business of any kind with them.

51.     Through a combination of primary and secondary sanctions, the United States has reached deep into the supply chains of the Iranian oil industry and effectively ended participation by legitimate businesses in the sale, purchase, or transportation of Iranian oil.  By 2018, United States sanctions had reduced Iran's oil exports by 90%, from 2.3 million barrels per day at the start of 2018 to a mere 260,000 barrels per day by October 2019.

52.     In response to United States sanctions, Iran has developed and now uses a variety of methods to evade United States sanctions against its oil industry.  These tactics exploit complexities in the global oil market, including its many production facilities, trading hubs, and shipping resources.  Through these techniques, Iran has been able to resume selling and transporting large volumes of oil in the global market. The tactics include, among other strategies, concealing the origin of oil on board oil tankers, concealing, the fact that those tankers are acting on behalf of Iran, and concealing the tankers' location and routes.

53.     Iran's new methods to circumvent sanctions have enjoyed considerable success.  In the first quarter of 2024, Iranian oil exports hit the highest level in six years.  Iran is now exporting an average of 1.56 million barrels per day.

54.     Iran has employed the Network and the Defendant Vessels since at least mid-2022 to evade United States sanctions on its oil trade.  The leaders of the Network used an expansive web of front companies and a fleet of stateless oil tankers to conceal the Iranian origin of shipments of oil and export Iranian oil around the world.  The Network has used storage units in the Port of

Sharjah in the United Arab Emirates and has blended oil products from non-sanctioned countries with Iranian oil to conceal its Iranian origin.  The Network also has performed ship-to-ship transfers off the coasts of Yemen, Singapore, and Venezuela and has blended Iranian oil with oil from non-sanctioned jurisdictions for delivery to Iran's petroleum buyers.  The front companies created or modified counterfeit certificates of origin and quality for the blended oil, which was then transported throughout the world.  Using the Defendant Vessels, the Network facilitated Iranian oil trades and generated revenue for Hezbollah and the IRGC-QF to support acts of terrorism.

55.     OFAC imposed sanctions on the Network under Executive Order (E.O.) 13224 as amended by E.O. 13886. E.O. 13224 and 13886 target terrorists, terrorist organizations, leaders, officials, and instrumentalities of terrorist groups, as well as those providing support to terrorists or acts of terrorism.  E.O. 13224 was adopted by President George W. Bush on September 23, 2001—less than two weeks after the attacks of September 11.  E.O. 13886 was adopted by President Donald J. Trump on September 9, 2019 to "further strengthen and consolidate sanctions to combat the continuing threat posed by international terrorism, and in order to take additional steps to deal with the national emergency declared in Executive Order 13224 of September 23, 2001." E.O. 13224 and 13886 provide a means to disrupt the financial support networks for state sponsors of terrorism and terrorist organizations by authorizing the United States government to block the assets of foreign individuals and entities that commit, or pose a significant risk of committing, acts of terrorism. E.O. 13224 and 13886 also authorize the United States government to block the assets of individuals and entities that provide support, services, or assistance to state sponsors of terrorism and terrorist organizations designated under the Order, as well as their subsidiaries, front organizations, agents, and associates.

56.     In its November 3, 2022 action, OFAC imposed sanctions on four individuals, who are members of the Network, for having materially assisted, supported, or provided financial, material, or technological support for, or goods and services to or in support of, Iran, the IRGC-QF, and Hezbollah.   The four sanctioned individuals are Edman Nafrieh, Rouzbeh Zahedi, Mohamed El Zein, and Viktor Artemov.

57.     Acting together and on behalf of Iran, Nafrieh, Zahedi, El Zein, and Artemov used a web of shell companies to orchestrate the sale and transportation of Iranian oil for re-sale to Asia-based buyers, particularly in China and Singapore.   OFAC concluded that the proceeds of these sales were funneled to IRGC-QF and Hezbollah to support acts of terrorism.

58.     Iranian national Edman Nafrieh is the CEO and Chairperson of Gilda Tar Karvan International Company.   Nafrieh oversaw dozens of companies that facilitated the Network's illegal blending and oil-exportation activities.   One of these companies was Al Hakeel Al Aswad Oil Trading LLC ("Al-Hakeel"), a front company used to sell Iranian oil for transportation and resale on the black market. Nafrieh also helped direct the Network's oil-smuggling profits to companies and bank accounts associated with the IRGC-QF and Hezbollah.

59.     Nafrieh was the Network's point of contact with the Iranian government.   Nafrieh received his orders from high-ranking Iranian officials associated with the Iranian Supreme Leader's Office.

60.     Rouzbeh Zahedi, another Iranian National, worked with the Network to transport Iranian oil abroad and used his companies to transfer funds to IRGC-QF and Hezbollah members.

61.     Zahedi worked closely with Mohammad El Zein, a Hezbollah member who assisted the Network by forging invoices for consulting and shipping services from shell companies.   This helped conceal the origins of the Network's financial transactions.

62.     Viktor Artemov organized and operated the fleet of vessels that the Network used to smuggle oil for resale abroad.  Artemov acquired Iranian oil from Nafrieh and arranged for the transportation and sale of that oil to buyers in Asia and other parts of the world.  To implement this scheme, Artemov used multiple front companies to buy and sell tankers that were in turn used to illegally transport blended Iranian oil for sale abroad.

63.     Artemov coordinated the activities of the vessels through three principal companies: Petro Naviero, Ava Petroleum, and Centrum Maritime ("Centrum").

64.     Artemov is a director and 50 percent owner of Petro Naviero.  OFAC found that Petro Naviero "through numerous subsidiaries had control of several vessels that were used for illicit oil shipments," that ultimately aided Iran, IRGC-QF, and Hezbollah, including Bueno, Bluefins, Boceanica, B Luminosa, Adisa, and Nolan.  United States Department of the Treasury, Treasury Sanctions Oil Shipping Network Supporting IRGC-QF and Hezbollah, dated November 3, 2022 ("OFAC Press Release"), attached as Exhibit 13, at 2.

65.     Artemov has managed Ava Petroleum since at least 2022.  Through Ava Petroleum, Artemov arranged purchases of oil from Iran, handled payments for ships transporting Iranian oil that were managed by other Artemov-controlled shell companies, coordinated oil shipments for blacklisted tankers to China and Singapore, and conducted illicit ship-to-ship transfers among tankers that were directly controlled by Ava Petroleum, Iranian tankers, and stateless tankers that were carrying Iranian oil.

66.     Artemov has also managed Centrum since at least 2022.  Centrum's shares are held by another individual in a trust for Artemov.  Centrum wholly owned Intrepid Navigators and thereby controlled Intrepid's subsidiary, Rising Tide Shipping.

67.     To conceal the involvement of Petro Naviero, Ava Petroleum, and Centrum in the sale and transportation of Iranian oil, Artemov registered companies in the Marshall Islands, Mauritius, Nigeria, and Singapore, including Harbour, Expanse Ship Management, Ltd. ("Expanse"), Monumont Ship Management, Ltd. ("Monumont"), and Thomarose.[3]

68.     The purpose of the Network's ship-to-ship transfers was to conceal the Iranian origin of the oil that would be sold by the transferee vessel at port.  Ship-to-ship transfers involve transferring oil between tanker ships moored alongside each other at sea.  A vessel can "upload" oil at an Iranian facility, travel away from Iran, and then, using hoses, transfer the oil to a different vessel that has not visited Iran.  In conjunction with falsified shipping documents and other methods, a ship-to-ship transfer can be used to conceal the origin of Iranian oil loaded onto the transferee tanker when it reaches its ultimate destination.

69.     "Uploading" means loading oil onto a tanker (a "mothership") from either a port facility or another tanker (a "child ship") through a ship-to-ship transfer.  "Downloading" means transferring oil from one tanker to an intended recipient.  Downloading can involve either (i) transferring oil from a tanker to a port facility, or (ii) transferring oil from a mothership to a child ship by ship-to-ship transfer.

70.     The Network's process to move the oil begins with Iranian personnel uploading oil onto Iranian VLCCs, usually near Kharg Island, Iran.  Kharg Island is Iran's principal port for oil exporting.  From there, the VLCCs then transport the oil to a hub, where the oil can be downloaded via ship-to-ship transfer to multiple non-Iranian child ships without docking at any port.  From

---

[3]     Expanse and Monumont are Artemov-controlled shell companies that formerly owned or managed Bluefins, B Luminosa, Bueno, and Boceanica.

there, the child vessels will travel to destinations such as China, Turkey, Venezuela, and Singapore to download the oil at either a port facility or to another tanker by ship-to-ship transfer.

71.     The primary ship-to-ship transfer hubs used by the Network are located near Fujairah and Khor Fakkan in the United Arab Emirates, Zohar in Oman, in the Malaca Straits off the coast of Malaysia, and off the coast of Venezuela.

72.     Satellite photographs confirm that the Defendant Vessels conducted ship-to-ship transfers on behalf of Iran on several occasions.  The satellite photographs show the Defendant Vessels "uploaded" Iranian oil at the hubs near Fujairah, Khor Fakkan, Zohar, the Malaca Straits, and Aruba Island off the coast of Venezuela.  The satellite photographs also capture the Defendant Vessels "downloading" Iranian oil near countries such as China, Yemen, and Nigeria.

73.     Defendants Bluefins, Boceanica, B Luminosa, Bueno, Adisa, and Nolan were among the tankers Artemov controlled through his network of shell companies. OFAC determined that Artemov used each of the Defendant Vessels to move Iranian oil on behalf of the Network.

74.     OFAC expressly sanctioned Bluefins, Boceanica, B Luminosa, Bueno, Adisa, and Nolan as separate legal entities at the same time it sanctioned the owners, operators, and management companies profiting from smuggling operations. *See* Office of Foreign Assets Control, Counter Terrorism Designations: Specially Designated Nationals List Update, dated January 4, 2024, attached as Exhibit 14, at 6 to 7; *see also* Ex. 13, OFAC Press Release.

75.     Because the Defendant Vessels Bluefins, Boceanica, B Luminosa, Bueno, Adisa, and Nolan were sanctioned by OFAC under E.O. 13224 as amended by E.O. 13886, those vessels are "blocked assets" within the meaning of sections 202 and 204 of the International Emergency Economic Powers Act and Section 201(a) of TRIA.

76.     The Defendant Vessels are not subject to a license issued by the United States Government for final payment, transfer, or disposition by or to a person subject to the jurisdiction of the United States in connection with a transaction for which the issuance of such license has been specifically required by a statute other than the International Emergency Economic Powers Act or the United Nations Participation Act of 1945.

77.     The blocked Defendant Vessels are not immune from execution pursuant to Section 201(d)(2)(B) of TRIA as sovereign, diplomatic, or consular property.

78.     The Defendant Vessels are not being used for diplomatic or consular purposes and are not subject to the Vienna Convention on Diplomatic Relations or the Vienna Convention on Consular Relations.

### III.     THE VESSELS ARE INSTRUMENTALITIES OF IRAN, THE IRGC, AND HEZBOLLAH

79.     Under Section 201(a) of TRIA, an "agency or instrumentality" of a terrorist party includes any person or entity that "was either: (1) materially assisting in, or providing financial or technological support for or to, or providing goods or services in support of" a terrorist party's activities; "and/or (2) owned, controlled, or directed by, or acting for or on behalf of" the terrorist party; "and/or (3) playing a significant role in" the terrorist party's activities.  *Stansell v. Revolutionary Armed Forces of Columbia*, 45 F.4th 1340, 1357 (11th Cir. 2022) (quotation marks and citation omitted); *see also Kirschenbaum v. 650 Fifth Ave. & Related Properties*, 830 F.3d 107, 135 (2d Cir. 2016) (defining "agency or instrumentality" to mean any defendant who "(1) was a means through which a material function of the terrorist party is accomplished, (2) provided material services to, on behalf of, or in support of the terrorist party, *or* (3) was owned, controlled, or directed by the terrorist party").  "[A]n instrumentality is a person or thing through which or by which some end or purpose is achieved."  *Stansell*, 45 F.4th at 1354.

80.     The Defendant Tankers are "agencies or instrumentalities" of Iran, the IRGC-QF, and Hezbollah under TRIA in each of these three ways.  The Defendant Vessels (1) materially assisted Iran, IRGC-QF, and Hezbollah by providing them with shipping services and a means of evading United States Sanctions; (2) in doing so, the Defendant Vessels acted on behalf of Iran, the IRGC-QF, and Hezbollah, and were subject to their direction and control, including directions and control relating to when to load Iranian oil, who the oil is being sold to, and where to deliver the oil; and (3) by helping to create and service a market for Iranian oil, the Defendant Vessels played a significant role in generating revenue used to finance the terrorist activities of Iran, IRGC-QF, and Hezbollah.

81.     **First**, the Defendant Vessels materially assisted Iran, IRGC-QF, and Hezbollah in evading United States sanctions and provided transportation services that allowed Iran, IRGC-QF, and Hezbollah to bring Iranian oil to the global market and obtain revenue to finance their terrorist activities.  As OFAC found, Artemov and his associates "through numerous subsidiaries had control of several vessels that were used for illicit oil shipments," that ultimately aided Iran, IRGC-QF, and Hezbollah, including Bluefins, B Luminosa, Boceanica, Bueno, Adisa, and Nolan.  Ex. 13, OFAC Press Release, at 2.  Through the use of the Defendant Vessels and other "vessels involved in blending oil to conceal the Iranian origins of the shipments," Artemov and the Network were able to use the Defendant Vessels to export Iranian oil around the world in support of Iran, the IRGC-QF, and Hezbollah.

82.     Bluefins, B Luminosa, Bueno, and Boceanica are currently managed by Harbour, an Artemov-controlled company, and were previously owned by Harbour, Expanse, or other Artemov-controlled entities before Artemov transferred ownership of those vessels to the other

22

shell companies he controls.  Some of these transactions simply moved vessels back and forth between the same owners.

83.     On behalf of Centrum, Artemov authorized the purchase, transportation, and sale of the oil tankers that were used to transport oil for the Network, Iran, IRGC-QF, and Hezbollah. OFAC found that, through Rising Tide and Intrepid, Artemov reinvested funds from the oil smuggling operations into the acquisition of acquisition of new vessels to increase the Network's fleet.

84.     The chain of ownership for each of these vessels is as follows:

a.     Bluefins was transferred from Harbour to Bluefins Shipping as of January 1, 2022. Harbour acquired Bluefins from Bluefins Shipping as of July 31, 2021.  Bluefins entered the Network when Bluefins Shipping acquired it from Lynne Navigation Corp. as of April 15, 2021.

b.     B Luminosa was transferred from Harbour to Vista Luminosa as of January 1, 2022. Harbour acquired B Luminosa from Vista Luminosa as of August 31, 2021.  B Luminosa entered the Network when Vista Luminosa acquired B Luminosa from Freeport Dominion SA as of May 19, 2021.

c.     Bueno was transferred from Harbour to Vista De Plata as of January 1, 2022. Harbour acquired Bueno from Vista De Plata as of July 31, 2021.  Bueno entered the Network when Vista De Plata acquired Bueno from Pisa Shipholding Corp. as of April 9, 2021.

d.     Boceanica was transferred from Concord Tankers Inc. ("Concord Tankers") to Vista Oceanica as of July 10, 2022.  Concord Tankers acquired Boceanica from Vista Oceanica as of August 12, 2021.  Boceanica entered the Network when Vista Oceanica acquired it from Concord Tankers as of June 9, 2021.

85.     Bluefins, B Luminosa, Bueno, and Boceanica have long been managed by Artemov's shell companies Harbour, Monumont, and Expanse.  The chain of management for each of these vessels is as follows:

a.      Bluefins has listed Harbour as its ship manager and International Safety Management ("ISM") manager since July 31, 2021.  Expanse had been the ship manager and ISM manager for Bluefins since 2021.  Before Bluefins came under Artemov's control and entered the Network in 2021, its ship manager and ISM manager had been Tsakos Columbia Shipmanagement S.A. ("Tsakos Columbia") since June 11, 2014.

b.      B Luminosa has listed Harbour as both its ship manager and ISM manager since August 31, 2021.  Expanse had the ship manager and ISM manager for B Luminosa since May 19, 2021.  Before B Luminosa came under Artemov's control and entered the Network in 2021, its ship manager and ISM manager had been Tsakos Columbia since July 1, 2010.

c.      Bueno has listed Harbour as both its ship manager and ISM manager since July 31, 2021.  Expanse had been the ship manager and ISM manager for Bueno since April 9, 2021, and April 14, 2021, respectively.  Before Bueno came under Artemov's control and entered the Network in 2021, its ship manager and ISM manager had been Western Shipping PTE, Ltd. ("Western Shipping").

d.      Boceanica has listed Harbour as both its ship manager and ISM manager since October 28, 2021.  Monumont had been the ship manager of Boceanica since August 12, 2021.  Before then, Western Shipping had been Boceanica's ship manager and ISM manager since August 5, 2004.

86.     The sale of Bueno to Harbour was arranged by Centrum.  OFAC found that Bueno "was used by Edman Nafrieh" to "transport oil for the oil smuggling network."  Ex. 13, OFAC Press Release, at 2 to 3.

87.     OFAC similarly found that Bluefins, B Luminosa, and Boceanica were controlled by Petro Naviero and Artemov to smuggle Iranian oil on the high seas on behalf of Iran, the IRGC-QF, and Hezbollah.  Ex. 13, OFAC Press Release, at 2.

88.     OFAC found that Monumont "manages several ships owned and/or managed by Artemov" to "move oil on behalf of the [N]etwork."  Ex. 13, OFAC Press Release, at 3.  OFAC further found that "Artemov's company Ava Petroleum handled payments for oil transported on ships managed by Monumont Ship on multiple occasions since early 2022."  *Id.*

89.     Adisa and Nolan were controlled by Centrum through its subsidiaries Pontus Navigation Corp. ("Pontus") and Triton Navigation Corp. ("Triton").   Adisa is owned by Triton and Nolan is owned by Pontus.  Artemov served as director of both Pontus and Triton.

90.     The chain of ownership for these vessels is as follows:

a.      Adisa has been owned by Triton since October 6, 2022.  Before then, Adisa had been owned by Pearl Ice Oceanway S.A. since October 31, 2019.

b.      Nolan has been owned by Pontus since August 29, 2022, when Nolan was acquired from Mauvelous Ltd.  Mauvelous Ltd. acquired Nolan from Cavalli Sea Navigation, Inc. as of December 13, 2021.  Cavalli Sea Navigation, Inc. had owned Nolan since June 10, 2021, when it acquired Nolan from Aquamarine Enterprises, Inc.  Aquamarine Enterprises, Inc. acquired Nolan from NYSA Shipping PTE Ltd. as of November 17, 2014.

91.     Thomarose has served as the ship manager and ISM manager of Adisa since March 12, 2021 when it entered the Network.  Before then, Altomore S.A. had served as Adisa's ship manager and ISM manager since October 31, 2019.

92.     Thomarose has served as the ship manager and ISM manager of Nolan since June 2021 when it entered the Network.  Before then, Smart Tankers Inc. had served as ship manager and ISM manager of Nolan since November 17, 2014.

93.     OFAC determined that both Nolan and Adisa transported Iranian oil to the international market in violation of United States sanctions and on behalf of Iran, the IRGC-QF, and Hezbollah.

94.     **Second**, the Defendant Vessels were controlled, directed by, and acted for and on behalf of Iran, IRGC-QF, and Hezbollah in implementing the smuggling network.  As alleged, the Defendant Vessels were controlled by Artemov through his ownership or control of Petro Naviero, Ava Petroleum, Centrum, and the subsidiaries and affiliates of those companies.  But Artemov ultimately acted on behalf of, and subject to the direction of, his suppliers in Iran.  Those suppliers included Nafrieh, who received his orders from high-ranking Iranian officials associated with the Iranian Supreme Leader's Office.

95.     **Third**, each vessel played a significant role in the activities of Iran, IRGC-QF, and Hezbollah by enabling them to generate revenue from the sale of oil in the global market and finance terrorist activities.  As OFAC found, Iran, IRGC-QF, and Hezbollah used the revenue generated from the sale of oil through this smuggling network to finance terrorism and other activities hostile to United States interests throughout the world.

96.     Iran was able to sell substantial quantities of oil to Artemov and his companies for transportation and re-sale on the black market.  Centrum and Ava Petroleum repeatedly purchased

Iranian oil and used the Defendant Vessels to transport that oil and sell it on the black market.  A key intermediary in this process was Al-Hakeel, Nafrieh's shell company for transferring Iranian oil for sale abroad.  Through Al-Hakeel, Nafrieh sold Iranian oil to Centrum and Ava Petroleum. By mid-2022, Centrum had purchased approximately 400,000 barrels of Iranian crude oil from Al-Hakeel.  Ex. 13, OFAC Press Release, at 4. Sometime before that, another Artemov-controlled shell company purchased 2 million barrels of oil from Al-Hakeel, with Ava Petroleum arranging the purchase.  *Id.*.

97.     Nafrieh, Zahedi, and other agents of the Network directed and transferred funds derived from the sale of oil to Artemov's companies for distribution on the black market by the Defendant Tankers to companies and bank accounts associated with the IRGC-QF and Hezbollah. Ex. 13, OFAC Press Release, at 1 to 2.

### IV.   THE VESSELS ARE STATELESS AND THUS SUBJECT TO THIS COURT'S IN REM JURISDICTION

98.     In an in rem enforcement proceeding, plaintiffs must provide a statement that the property is within the district or will be within the district while the action is pending.  Satellite imagery confirms that the Defendant Vessels are presently active on navigable waters, often outside the territorial waters of any nation.  But the Defendant Vessels are stateless, and thus are treated as subject to United States law and as part of the territory of the United States for purposes of the Court's *in rem* jurisdiction.

99.     The national status of a vessel is determined by a specialized jurisdictional system developed over the centuries, which is called "the law of the flag."  Under the law of the flag, a ship is deemed to have the nationality of the country whose flag it is entitled to fly.  That country is often referred to as the "flag state," and vessels are often referred to as "flying the flag" of the flag state.

100.    The law of the flag imposes a variety of requirements on vessels.  Among other things, the law of the flag requires vessels to be registered by one and only one flag state.  By registering with a particular state, a vessel is thereby subject to the laws and jurisdiction of that State regardless of where it is physically located.  The flag State's courts thus have jurisdiction to deal with the vessel's conduct or the conduct of the crew, regardless of whether that conduct occurs on the high seas or in the territorial waters of another state.  And a vessel "is deemed to be a part of the territory of that sovereignty (whose flag it flies)."  *Lauritzen v. Larsen*, 345 U.S. 571, 585 (1953); *see also Ross v. McIntyre*, 140 U.S. 453, 464 (1891) ("[A] ship which bears a nation's flag is to be treated as a part of the territory of that nation.  A ship is a kind of floating island.").

101.    By their nature, merchant marine vessels constantly move in and out of the jurisdiction of many States.  Often, they travel on the high seas, which are not typically subject to the territorial jurisdiction of any state.  But by virtue of the law of the flag, a registered vessel is subject to the jurisdiction of the flag State no matter where it is physically located, whether on the high seas or in the territorial waters of another State.  The principles of the law of the flag thus supersede traditional principles of territorial jurisdiction which would otherwise limit a State's right to exercise jurisdiction to its geographic borders and territorial waters.

102.    All vessels are required by international law to register with a flag state.  To fly a State's flag, a vessel must register with the State's vessel registration authority and, in addition, must comply with the laws of that State.  When a State registers a vessel, it will issue official documentation affirming that the vessel is registered with that State and authorized to fly its flag.

103.    A vessel is "stateless" when it is not authorized to fly the flag of any recognized State.  Vessels can be stateless for several reasons.

28

104.    Vessels are stateless if they are not registered by a recognized State to fly its flag, whether because the vessel was never registered or because the State withdrew its authorization from the vessel.  To evade the legal and operational consequences of being stateless, stateless vessels may use forged or otherwise fake registration documents in an effort to misrepresent their flag status.

105.    Flag States also have the right to remove their flag from a vessel, and most flag States constantly monitor and review a vessel's status and conduct for compliance with its laws and regulations and to ensure seaworthiness.

106.    Vessels are also stateless if they attempt to fly the flag of more than one State or fly flags of States with which they have no substantial connection.  "[F]ailure to unmistakably accede to the authority of a single sovereign while traversing the high seas" by "chameleon like changes of nationality as circumstances dictate" will deprive a vessel of flagged status.  *United States v. Marino-Garcia*, 679 F.2d 1373, 1384 (11th Cir. 1982).

107.    Under United States and international law, vessels "without nationality are international pariahs.  They have no internationally recognized right to navigate freely on the high seas," *Marino-Garcia*, 679 F.2d at 1382, and they have no diplomatic protection from any State. *See* R.R. Churchill & A.V. Lowe, THE LAW OF THE SEA 257 (3d ed. 1999); *Molvan v. Attorney Gen. for Palestine* (The "Asya"), [1948] A.C. 351, 369-70 (P.C.) (noting that no state can assert diplomatic protection over a stateless vessel because only the flag state can exercise diplomatic protection on a vessel's behalf).  As a result, "all nations can treat them as their own territory and subject them to their laws."  *United States v. Caicedo*, 47 F.3d 370, 373 (9th Cir. 1995).  United States courts have territorial jurisdiction over stateless vessels because such vessels are treated as

part of the territorial United States, even when the conduct of those vessels on the high seas has no actual nexus with the United States.

108.    Exercising in rem jurisdiction over vessels in international waters is not unusual. "The exercise of admiralty subject matter jurisdiction has never been limited to maritime causes arising solely in the United States territorial waters.  On the contrary, maritime causes arising from matters on the high seas anywhere in the world have traditionally been brought to courts of admiralty." *R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 961 (4th Cir. 1999); *see also Treasure Salvors, Inc. v. The Unidentified Wrecked & Abandoned Sailing Vessel*, 640 F.2d 560, 567 (5th Cir.1981) ("[T]he admiralty jurisdiction of United States courts is not limited by the nationality of ships, sailors or seas involved."); Grant Gilmore & Charles Black, Jr., THE LAW OF ADMIRALTY § 1–19, at 51–52 (2d ed. 1975) ("The courts of the United States take jurisdiction … of suits on maritime claims arising out of transactions and occurrences anywhere in the world.").

109.    The following indicia, among others, demonstrate a vessel is stateless:

a.    Reports by the IMO's GISIS database that the vessel's flag, call sign or MMSI[4] are unknown.

b.    Reports by Equasis that the vessel's flag, call sign, or MMSI are unknown.

c.    the vessel's failure to comply with international legal norms requiring vessels to broadcast their locations continuously and in real time.

i.    The International Convention for the Safety of Life at Sea ("SOLAS") mandates that maritime vessels the size of the Defendant Vessels be equipped with

---

[4] MMSI stands for Maritime Mobile Service Identity. It serves as a unique nine-digit code used to identify vessels and other maritime objects. Unlike the IMO number, which is a permanent global identifier, an MMSI is a temporarily assigned unique identifier issued by the vessel's current flag state.

technology that enables long-range identification and tracking ("LRIT"). LRIT systems typically involve two components:

(1)     **Global Positioning System ("GPS")**. GPS is a satellite-based radio navigation system that provides geolocation and time information to a GPS receiver anywhere on or near the Earth. GPS on vessels functions similarly to GPS systems in cell phones, automobiles, and other consumer devices.

(2)     **Automated Identification System**. With few exceptions, SOLAS also requires certain classes of vessels traveling on international voyages to operate a tracking system called the Automatic Identification System ("AIS") at all times. Using high-frequency radio waves, AIS transmits a vessel's IMO number, name, location data, destination, cargo, and a timestamp for the data transmission.

ii.      LRIT systems allow the maritime industry to track the physical location of any AIS- or GPS-equipped vessel no matter where that vessel might be on Earth.

iii.     Vessels fail to comply with, and violate, SOLAS' LRIT requirements by turning off their LRIT systems and/or by manipulating the information broadcast by its GPS and AIS system to falsely report the vessel's location, destination, or other information.

c.     the vessel lacks insurance.

d.     the vessel lacks a certificate from a maritime classification society. Classification societies are non-governmental organizations that oversee and inspect vessels during construction and, after construction, regularly inspect vessels over their lifetime to ensure seaworthiness and compliance with applicable domestic and international law. Classification societies also provide certifications that vessels are or are not fully compliant with applicable domestic and international

31

standards. Flag States can and do withdraw their flags from vessels that are not certified by a classification society as being in compliance with that State's domestic law and international law.

110. Bluefins is stateless.

a. Equasis reports that Bluefins does not have a flag, call sign or MMSI. Ex. 1, Equasis Report on Bluefins, at 1.

b. IMO reports that Bluefins does not have a flag, call sign or MMSI. Ex. 2, IMO GISIS Report for Bluefins.

c. Bluefins is not complying with SOLAS LRIT requirements.

i   Bluefins has continuously turned its AIS and GPS systems off since April 2021, only activating those systems on two occasions. The first was in June 2021 while passing Gibraltar, where activating the AIS and GPS systems would have been necessary to avoid collisions. The second was when passing the Gulf of Guinea in November 2021.

ii   Recently, Bluefins was transmitting a fake position that placed the ship right next to land in Lagos, Nigeria, with the vessel's hull only 12.5 meters below the waterline—which is impossible for a ship of Bluefin's size.

d. Bluefins does not currently have maritime or Protection and Indemnity Club ("P&I Club") insurance.[5]

e. Bluefins was captured in satellite photographs conducting a ship-to-ship transfer near Aruba Island off the coast of Venezuela.

---

[5] P&I Clubs are mutual insurance associations. Their members are shipowners who join the club for the purpose of collectively insuring all members of the club. P&I Clubs allow shipowners to proportionally share risks of loss that traditional maritime insurers will not insure, such as third-party claims concerning loss or damage to cargo or personal injuries suffered by crew members.

111.    B Luminosa is stateless.

a.      Equasis reports that B Luminosa does not have a flag, call sign or MMSI.  Ex. 5, Equasis Report on B Luminosa, at 1.

b.      IMO reports that B Luminosa does not have a flag, call sign or MMSI.  Ex. 6, IMO GISIS Report for B Luminosa.

c.      B Luminosa is not complying with SOLAS LRIT requirements.

i.      B Luminosa has continuously turned its AIS and GPS systems off since April 2021, only activating its AIS system once in September 2021 to comply with port authority requirements in Shanghai, China.

ii.      B Luminosa has been transmitting the same position in Shanghai for almost three years.

d.      B Luminosa does not currently have maritime or P&I Club insurance.

e.      B Luminosa does not currently have a classification certificate.  Ex. 5, Equasis Report on B Luminosa, at 2.

112.    Bueno is stateless.

a.      Equasis reports that Bueno does not have a flag, call sign or MMSI. Ex. 7, Equasis Report on Bueno, at 1.

b.      IMO reports that Bueno does not have a flag, call sign or MMSI. Ex. 8, IMO GISIS Report on Bueno.

c.      Bueno is not complying with SOLAS LRIT requirements.

i.      Bueno has almost continuously kept its AIS and GPS systems off since April 2021, activating its AIS system only infrequently.

ii.      On April 18, 2021, shortly after Bueno was purchased by Vista De Plata, Bueno uploaded Iranian oil in Fujairah, at a ship-to-ship transfer hub where oil was brought by Iranian tankers that had loaded oil at Kharg Island, Iran.

iii.     On May 10, 2021, Bueno crossed the Strait of Gibraltar, entered the Atlantic Ocean, and turned off its AIS.  Bueno crossed the Strait of Gibraltar into the Mediterranean Sea on October 30, 2022.  Given the length of time that elapsed between these two crossings of the Strait of Gibraltar, allege, on information and belief, that Bueno visited Venezuela, which is frequented by ships in the Network.

iv.     On November 6, 2022, Bueno arrived at the Port of Benghazi in Libya. Illegal and sanctioned oil-smuggling activity is routinely conducted at the Port of Benghazi.

v.      In December 2023, Bueno opened its AIS transmission in Port Said, Egypt to avoid collision.  After that, Bueno turned off its AIS.

vi.     Bueno has also transmitted fake positions.  As of January 2024, Bueno had been transmitting a position next to Istanbul for two months and 16 days.  According to the transmission, the vessel's hull was sitting just 8.5 meters below the waterline.  An empty Panamax tanker like Bueno needs at least fifteen meters of water.  Thus, it was not possible for Bueno to be at the position it reported.

d.     Bueno does not currently have maritime or P&I Club insurance.

e.     Bueno was observed by satellite conducting a ship-to-ship transfer with a National Iranian Tanker Company ship off the coast of Fujairah.

113.    Boceanica is stateless.

a.     Equasis reports that Boceanica does not have a flag or call sign. Ex. 3, Equasis Report on Boceanica, at 1.

b.      IMO reports that Boceanica does not have a flag or call sign. Ex. 4, IMO GISIS Report on Boceanica.

c.      Boceanica is not complying with SOLAS LRIT requirements.

i.      Boceanica has turned off its AIS and GPS since 2022, when it came into the control of Harbour.  Since then, Boceanica has *never* opened its AIS transmissions system.

ii.      For more than two months, Boceanica has transmitted a false location in the sea of Marmara near Istanbul, Turkey.

d.      Boceanica does not currently have maritime or P&I Club insurance.

e.      Boceanica does not currently have a classification certificate. Ex. 3, Equasis Report on Boceanica, at 2.

f.      In 2022, Boceanica was observed by satellite conducting a ship-to-ship transfer near Venezuela and Aruba Island.

114.    Nolan is stateless.

a.      Equasis reports that Nolan does not have a flag, call sign or MMSI. Ex. 11, Equasis Report on Nolan, at 1.

b.      IMO reports that Nolan does not have a flag, call sign or MMSI. Ex. 12, IMO GISIS Report on Nolan.

c.      Nolan is not complying with SOLAS LRIT requirements.

i.      On June 30, 2021, just after being bought by Pontus, Nolan uploaded oil by ship-to-ship transfer from Iranian tankers that had loaded only at Kharg Island, Iran.  On August 20, 2021, Nolan arrived in Venezuela and downloaded the oil.

ii.      From 2022 on, Nolan has routinely broadcast fake positions and used a false ship name.

iii.      On February 18, 2022, Nolan unloaded oil via ship-to-ship transfer at an Iranian hub near Malaysia, which is a hub for ship-to-ship oil transfers, often involving oil aboard tankers arriving from Fujairah, another hub for ship-to-ship transfers of Iranian crude oil.  On March 29, 2022, Nolan arrived at Lonchan Port in China and downloaded the oil.

iv.      On April 23, 2022, Nolan uploaded at the hub near Malaysia again.  Nolan downloaded that oil shipment in Venezuela on August 30, 2022.

v.      On February 21, 2024, Nolan reported that it was crossing the Bab-al-Mandab Strait.  The Bab-al Mandab Strait is between Yemen on the Arabian Peninsula and Djibouti and Eritrea in the Horn of Africa.

vi.      On March 4, 2024, Nolan was identified near Tema, Ghana, after making a trip to Venezuela.

vii.      On April 9, 2024, Nolan was in the Gulf of Oman, where, upon information and belief, it was uploading Iranian oil by ship-to-ship transfer.

viii.      While conducting these voyages, Nolan generally deactivated its AIS transmitter.

d.      Nolan does not currently have maritime or P&I Club insurance.

e.      Nolan does not currently have a classification certificate. Ex. 11, Equasis Report on Nolan, at 2.

115.    Adisa is stateless.

a.      Equasis reports that Adisa does not have a flag, call sign or MMSI. Ex. 9, Equasis Report on Adisa, at 1.

b.      IMO reports that Adisa does not have a flag, call sign or MMSI. Ex. 10, IMO GISIS Report on Adisa.

c.      Adisa is not complying with SOLAS LRIT requirements.

i.      On September 6, 2021, a few months after Thomarose began managing Adisa, Adisa uploaded oil at the Iranian ship-to-ship transfer hub near Malaysia.  Adisa downloaded the oil in Qingdao, China on October 3, 2021.  From China, Adisa travelled by Johor, Malaysia, and on to a destination in South America.

ii.      On April 28, 2022, Adisa again uploaded oil at the Iranian ship-to-ship transfer hub near Malaysia.  Adisa downloaded the oil in Lanshan, China, on May 24, 2022.

iii.      In August 2022, Adisa uploaded oil at the Iranian ship-to-ship transfer hub in Khor Fakkan.  Adisa downloaded the oil near Aruba Island, off the coast of Venezuela. Adisa turned off its AIS while traveling to Aruba Island.

iv.      On November 21, 2023, Adisa downloaded oil near Lagos, Nigeria.

v.      On January 26, 2024, Adisa arrived in Kharg Island to upload at Iran's main oil port.  Adisa stopped at the Port of Salif in Hodeida, Yemen, to download the oil.

vi.      In February 2024, Adisa caused to be represented in maritime publications that it was being sold for scrap to conceal its location and activities. To further conceal its location and activities, the Nolan sent AIS and GPS transmissions representing it was sailing to India, and thereafter faked its AIS and GPS position to show it being continuously located in Alang, India, where many major scrap yards are located.

vii.      An in-person investigation of Alang scrap yards determined that no demolition application for Adisa had, in fact, been filed by any scrap yard in India.

viii.     While reporting its position in Alang, India, Adisa was tracked by satellite traveling near the United Arab Emirates.

ix.     While satellite imagery captured Adisa drifting around the United Arab Emirates, Adisa was continuously reporting a position in Alang, India.

x.     Shortly after reporting its position in Alang, India, Adisa was observed by satellite near Kharg Island, Iran, where Iran loads oil onto tankers for distribution around the world.

xi.     On March 16, 2024, shortly after being observed at Kharg Island, Iran, Adisa was observed by satellite off the coast of Yemen in an area that is known for illicit ship-to-ship transfers and blending activities involving Iranian oil.

d.     Adisa does not currently have maritime or P&I Club insurance.

e.     Adisa does not currently have a classification certificate. Ex. 9, Equasis Report on Adisa, at 2.

116.     Because none of the Defendant Vessels are presently authorized to fly the flag of any State, all of the Defendant Vessels are stateless.

117.     Because all of the Defendant Vessels are stateless:

a.      None has any diplomatic or jurisdictional protection from any other State;

b.     Each is subject to the laws of the United States and the jurisdiction of United States courts; and

c.     Each is deemed to be territory of the United States for purposes of applying United States law and for purposes of establishing jurisdiction over them based on claims relating to their maritime activities.

## COUNT I

### (For Judgment of Maritime Condemnation and Forfeiture)

118.    Plaintiffs re-allege and incorporate by reference the allegations of ¶¶ 1-117.

119.    This is an admiralty or maritime claim within the meaning of Federal Rule of Civil Procedure 9(h).

120.    Under Section 201(a) of TRIA, Plaintiffs are entitled to execute on the Defendant Vessels because Plaintiffs (i) hold final monetary judgments against Iran, the IRGC, and Hezbollah based on acts of terrorism; (ii) the Defendant Vessels are blocked assets; and (iii) the Defendant Vessels are instrumentalities of Iran, the IRGC, and Hezbollah.

121.    The enforcement of the Hoglan Plaintiffs' original judgments against Iran, the IRGC, and Hezbollah sounds in admiralty because the Hoglan Plaintiffs' right to enforce their judgments against the Defendant Vessels is based on the fact the Vessels are instrumentalities of, and have been engaged in maritime activity for the benefit of, a terrorist party on the high seas in violation of United States sanctions.

122.    This Section 201(a) of TRIA enforcement proceeding is, therefore, a maritime claim that gives the Hoglan Plaintiffs the right to a maritime lien or a right to condemnation in rem of vessels that constitute "agencies or instrumentalities" of terrorist parties.  For centuries, maritime law has recognized that maritime liens attach to ships for infringing national statutes or principles of the law of nations, such as violating revenue acts or embargo laws, running commercial blockades, committing acts of piracy, or engaging in unlawful trade.  As applied to vessels on the high seas, Section 201(a) of TRIA provides private plaintiffs with a maritime claim, and a civil forfeiture remedy, against vessels who perform such actions as "agencies or instrumentalities" of a terrorist party.  The remedy provided by Section 201(a) is either a means of

enforcing a maritime lien or provides for a proceeding analogous to a traditional in rem maritime condemnation action.

123.   Rule C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions permits plaintiffs to bring an action in rem (a) to enforce a maritime lien; or (b) to enforce a statutory in rem right "[w]henever a statute of the United States provides for a maritime action in rem or a proceeding analogous thereto."

124.   The Hoglan Plaintiffs request this Court to enter judgment against the Defendant Vessels declaring that the Defendant Vessels are liable to condemnation and forfeiture in partial satisfaction of their judgments.

## COUNT II

### (For Judgment Recognizing Ownership and Possession Pursuant to TRIA and Supplemental Rule D)

125.   Plaintiffs re-allege and incorporate by reference the allegations of ¶¶ 1-117.

126.   This is an admiralty or maritime claim within the meaning of Federal Rule of Civil Procedure 9(h).

127.   Under Section 201(a) of TRIA, Plaintiffs are entitled to execute on the Defendant Vessels because Plaintiffs (i) hold final monetary judgments against Iran, the IRGC-QF, and Hezbollah based on acts of terrorism; (ii) the Defendant Vessels are blocked assets; and (iii) the Defendant Vessels are instrumentalities of Iran, the IRGC-QF, and Hezbollah.

128.   In a maritime forfeiture action, a judgment creditor, like the Hoglan Plaintiffs, is entitled to ownership and possession of a vessel subject to forfeiture in rem.

129.    TRIA renders the Defendant Vessels liable on the Hoglan Plaintiffs' judgments against Iran, the IRGC, and Hezbollah, and further renders the Defendant Vessels subject to in rem forfeiture to satisfy those judgments.

130.    As a result of an in rem forfeiture, title to the forfeited vessel passes to the plaintiff entitled to condemnation and forfeiture of the vessel.

131.    Rule D of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions permits plaintiffs to bring a petitory action to establish an original claim to legal title of a vessel.

132.    The Hoglan Plaintiffs are entitled to a judgment recognizing they have legal title to the Defendant Vessels because the Defendant Vessels are subject to in rem condemnation and forfeiture under TRIA.

## COUNT III

### (For Turnover Pursuant to Section 56.29, Florida Statutes)

133.    Plaintiffs re-allege and incorporate by reference the allegations of ¶¶ 1-17 & 23 - 117.

134.    In the alternative, if federal admiralty jurisdiction does not exist for this action, Plaintiffs are entitled to a turnover judgment running against the Defendant Vessels under Federal Rule of Civil Procedure 69(a)(1) and Section 56.29, Florida Statutes.

135.    Section 56.29 allows a court to "order any property of the judgment debtor, not exempt from execution, or any property, debt, or other obligation due to the judgment debtor … to be levied upon and applied toward the satisfaction of the judgment debt."  § 56.29(6), Fla. Stat. (2023).

136.    The court may enter any orders, judgments, or writs required to carry out the purpose of Section 56.29, "including those orders necessary or proper to subject property or property rights of any judgment debtor to execution." § 56.29(6), Fla. Stat. (2023).  This includes the power to issue a turnover order commending a judgment debtor to surrender property to a judgment creditor.

137.    Under Section 201(a) of TRIA, the Defendant Vessels are judgment debtors of the Hoglan Plaintiffs.  Under Florida law, a "judgment debtor" is any person who is liable on a judgment, an order, or a decree subject to execution under Chapter 56, Florida Statutes.  As alleged, the Defendant Vessels are liable on the Hoglan Plaintiffs' judgments against Iran, the IRGC-QF, and Hezbollah because they are "instrumentalities" of those terrorist parties within the meaning of TRIA.

138.    As alleged, this Court has in rem jurisdiction over the Defendant Vessels to direct turnover.  The Defendant Vessels are stateless ships located on the high seas.  As such, they are treated as part of the territory of the United States, are subject to the territorial jurisdiction of the courts of the United States, and are subject to United States law.

139.    The Defendant Vessels are movable or transferrable property subject to execution under Section 56.29(6), Florida Statutes.

140.    Plaintiffs are entitled to a turnover order transferring ownership of the Defendant Vessels to Plaintiffs for sale in satisfaction of their judgments against Iran, the IRGC, and Hezbollah, and for other appropriate relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)     enter a judgment in rem against Bluefins, Boceanica, B Luminosa, Bueno, Adisa, and Nolan recognizing Plaintiffs' maritime in rem liens on those Vessels under Section 201(a) of TRIA;

(2)     enter a judgment in rem against Bluefins, Boceanica, B Luminosa, Bueno, Adisa, and Nolan recognizing that those Vessels are subject to execution in partial satisfaction of the Hoglan Plaintiffs' judgments for compensatory damages;

(3)     declare that Plaintiffs are the rightful owners of, and are entitled to immediate turnover of Bluefins, Boceanica, B Luminosa, Bueno, Adisa, and Nolan;

(4)     issue a warrant of arrest against Bluefins, Boceanica, B Luminosa, Bueno, Adisa, and Nolan pursuant to Supplemental Rule C;

(5)     issue an order directing Bluefins, Boceanica, B Luminosa, Bueno, Adisa, and Nolan, and any other applicable entity, to transfer control and possession to the Plaintiffs;

(6)     order that Bluefins, Boceanica, B Luminosa, Bueno, Adisa, and Nolan be condemned and forfeited to satisfy Plaintiffs' liens;

(7)     grant Plaintiffs the costs of suit, reasonable attorneys' fees, and other expenses incurred in connection with bringing this action; and

(8)     grant any other relief as the Court may deem just and proper.

Dated: April 29, 2024                    Respectfully submitted,


                                         *s/ Stuart H. Singer*
                                         Stuart H. Singer
                                         Fla. Bar No. 377325
                                         ssinger@bsfllp.com
                                         BOIES SCHILLER FLEXNER LLP
                                         401 E. Las Olas Blvd.
                                         Suite 1200
                                         Fort Lauderdale, FL 33301

Phone: (954) 356-0011
Fax:    (954) 356-0022

*Counsel for Plaintiffs*

## APPENDIX 1

## HOGLAN PLAINTIFFS

1.      Candyce Hoglan is the Personal Representative of the Estate of Mark Kendall Bingham.  The Estate of Mark Kendall Bingham has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

2.      Candyce Hoglan is the Personal Representative of the Estate of Alice Hoagland a/k/a Alice Hoglan, a surviving Parent (now deceased) of Mark Kendall Bingham.  The Estate of Alice Hoglan has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

3.      Kui Liong Lee is the Personal Representative of the Estate of Siew Nya Ang. The Estate of Siew Nya Ang has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

4.      Kui Liong Lee is the surviving Spouse of Siew Nya Ang.  Kui Liong Lee has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

5.      Winnee Lee is a surviving Child of Siew Nya Ang.  Winnee Lee has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

6.      Jeanee Lee is a surviving Child of Siew Nya Ang.  Jeanee Lee has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

7.      Arline Peabody-Bane is a surviving Step-Parent of Michael Bane. Arline Peabody-Bane has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

8.      Brian Major is a surviving Step-Sibling of Michael Bane.  Brian Major has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

9.      Brenda Jobe is a surviving Step-Sibling of Michael Bane.  Brenda Jobe has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

10.     Joseph Carpeneto is the Personal Representative of the Estate of Joyce Ann Carpeneto. The Estate of Joyce Ann Carpeneto has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

11.     Joseph Carpeneto is a surviving Sibling of Joyce Ann Carpeneto. Joseph Carpeneto has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

12.     Dian Dembinski is the Personal Representative of the Estate of Sandra Wright Cartledge. The Estate of Sandra Wright Cartledge has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

13.     Dian Dembinski is a surviving Sibling of Sandra Wright Cartledge. Dian Dembinski has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

14.     Melanie Buchman is the Personal Representative of the Estate of Loretta Haines, a surviving Sibling (now deceased) of Sandra Wright Cartledge. The Estate of Loretta Haines has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

15.     Stephen Bradish is a surviving Sibling of Sandra Wright Cartledge. Stephen Bradish has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

16.     Geraldine Deborah Spaeter is a surviving Sibling of Sandra Wright Cartledge. Geraldine Deborah Spaeter has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

17.      Lynne Dunn is the Personal Representative of the Estate of Jack Bradish a/k/a John

46

Bradish is a surviving Sibling (now deceased) of Sandra Wright Cartledge. The Estate of Jack Bradish a/k/a John Bradish has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

18.     Nicholas Chirchirillo is a surviving Child of Peter Chirchirillo. Nicholas Chirchirillo has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

19.     Michael Chirchirillo is a surviving Child of Peter Chirchirillo. Michael Chirchirillo has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

20.     Joan Ann Coale is a surviving Parent of Jeffrey Coale. Joan Ann Coale has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

21.     Leslie Coale Brown is a surviving Sibling of Jeffrey Coale. Leslie Coale Brown has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

22.     Daniel D. Coffey is the Personal Representative of the Estate of Jeannette Coffey, is a surviving parent (now deceased) of Daniel M. Coffey.  The Estate of Jeannette Coffey has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

23.     Daniel D. Coffey is the Personal Representative of the Estate of Daniel F. Coffey, Jr., a surviving Parent (now deceased) of Daniel M. Coffey. The Estate of Daniel F. Coffey, Jr. has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

24.     Colleen McDonald is a surviving Fiancée of Jason Coffey. Colleen McDonald has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

25.     Keith Bradkowski is Personal Representative of the Estate of Beverly Sutton, a surviving Parent (now deceased) of Jeffrey Collman. The Estate of Beverly Sutton has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

26.    Carolyn Sutton is a surviving Sibling of Jeffrey Collman.  Carolyn Sutton has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

27.    Vicki Lynn Michel is a surviving Sibling of Jeffrey Collman. Vicki Lynn Michel has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

28.    Keith Bradkowski is the surviving Spouse of Jeffrey Collman. Keith Bradkowski has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

29.    Kathryn Collman is a surviving Step-Parent of Jeffrey Collman. Kathryn Collman has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

30.    Charles Gengler is a surviving Step-Sibling of Jeffrey Collman. Charles Gengler has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

31.    Steven Gengler is a surviving Step-Sibling of Jeffrey Collman. Steven Gengler has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

32.    Susan Bohan is a surviving Step-Sibling of Jeffrey Collman. Susan Bohan has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

33.    Tanya Davis is the Personal Representative of the Estate of Wayne T. Davis.  The Estate of Wayne T. Davis has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

34.    Tanya Davis is the surviving spouse of Wayne T. Davis.  Tanya Davis has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

35.    Gabrielle Hunter Davis is the surviving Child of Wayne T. Davis.  Gabrielle Hunter Davis has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

36.    Malachai Roarke Davis is the surviving Child of Wayne T. Davis.  Malachai Roarke

Davis has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

37.     Noverta Davis-Dean is the surviving Parent of Wayne T. Davis.  Noverta Davis-Dean has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

38.     Jason Diehl is a surviving Child of Michael Diehl. Jason Diehl has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

39.     Jeannette Diehl Bergquist is a surviving Child of Michael Diehl. Jeanette Diehl Bergquist has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

40.     Cirilo Fernandez is a surviving Parent of Judy Fernandez. Cirilo Fernandez has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

41.     Timothy Regan is the Personal Representative of the Estate of Emma Fernandez Regan, a surviving Sibling (now deceased) of Judy Fernandez. The Estate of Emma Fernandez Regan has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

42.     Richard Fernandez is a surviving Sibling of Judy Fernandez. Richard Fernandez has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

43.     Reneé L. Gamboa is a surviving Parent of Ronald Gamboa. Renee L. Gamboa has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

44.     Reneé L. Gamboa brings this action as Personal Representative of the Estate of Ranulf Gamboa, a surviving Parent (now deceased) of Ronald Gamboa. The Estate of Ranulf Gamboa has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and

Hezbollah.

45.     Maria Joule is a surviving Sibling of Ronald Gamboa. Maria Joule has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

46.     Rachel G. Malubay is a surviving Sibling of Ronald Gamboa. Rachel G. Malubay has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

47.     John Haller is the Personal Representative of the Estate of James Bond Godshalk, a surviving Parent (now deceased) of William Godshalk. The Estate of James Bond Godshalk has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

48.     Jane G. Haller is a surviving Sibling of William Godshalk. Jane G. Haller has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

49.     Aleese M. Hartmann is a surviving Fiancée of William Godshalk. Aleese M. Hartman has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

50.     Kathryn Grazioso is a surviving Child of John Grazioso. Kathryn Grazioso has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

51.     Kristen Grazioso is a surviving Child of John Grazioso. Kristen Grazioso has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

52.     Michael Grazioso is a surviving Child of John Grazioso. Michael Grazioso has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

53.      Carolee Azzarello is the Personal Representative of the Estate of Sandra Grazioso is a surviving Parent (now deceased) of John Grazioso. The Estate of Sandra Grazioso has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

54.     Carolee Azzarello is a surviving Sibling of John Grazioso. Carolee Azzarello has a

judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

55.      Karen Ventre is a surviving Sibling of John Grazioso. Karen Ventre has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

56.      Krysty Grazioso is a surviving Sibling of John Grazioso.  Krysty Grazioso has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

57.      Deborah Grazioso is the Personal Representative of the Estate of Timothy Grazioso.  The Estate of Timothy Grazioso has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

58.      Deborah Grazioso is the surviving Spouse of Timothy Grazioso. Deborah Grazioso has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

59.      Lauren Grazioso is a surviving Child of Timothy Grazioso. Lauren Grazioso has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

60.      Briana Grazioso is a surviving Child of Timothy Grazioso. Briana Grazioso has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

61.      Carolee Azzarello is the Personal Representative of the Estate of Sandra Grazioso is a surviving Parent (now deceased) of Timothy Grazioso. The Estate of Sandra Grazioso has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

62.      Carolee Azzarello is a surviving Sibling of Timothy Grazioso. Carolee Azzarello has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

63.      Karen Ventre is a surviving Sibling of Timothy Grazioso. Karen Ventre has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

64.      Krysty Grazioso is a surviving Sibling of Timothy Grazioso. Krysty Grazioso has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

65.     Douglas Halvorson is a surviving Child of James Halvorson. Douglas Halvorson has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

66.     Kate Halvorson is the Personal Representative of the Estate of Evelyn Halvorson, a surviving Parent (now deceased) of James Halvorson. The Estate of Evelyn Halvorson has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

67.     Kate Halvorson is a surviving Sibling of James Halvorson. Kate Halvorson has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

68.     Michaela Havlish is a surviving Child of Donald Havlish. Michaela Havlish has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

69.     Sean Bitterman is a surviving Step-Child of Donald Havlish. Sean Bitterman has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

70.     Lea Bitterman is a surviving Step-Child of Donald Havlish. Lea Bitterman has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

71.     Derrick Hobin is a surviving Child of James Jeffery Hobin. Derrick Hobin has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

72.     Melodie Homer is the Personal Representative of the Estate of LeRoy W. Homer, Jr.. The Estate of LeRoy W. Homer, Jr. has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

73.     Melodie Homer is the surviving Spouse of LeRoy W. Homer, Jr.. Melodie Homer has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

74.     Laurel Homer is the surviving Child of LeRoy W. Homer, Jr.. Laurel Homer has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

75.     Ju-Hsiu Jian a/k/a Connie Jian is the Personal Representative of the Estate of

Hweidar Jian.   The Estate of Hweidar Jian has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

76.   Ju-Hsiu Jian a/k/a Connie Jian is the surviving Spouse of Hweidar Jian.  Ju-Hsiu Jian a/k/a Connie Jian has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

77.   William Jian is a surviving Child of Hweidar Jian.   William Jian has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

78.   Kevin Jian is a surviving Child of Hweidar Jian.  Kevin Jian has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

79.   Candy Moyer is the Personal Representative of the Estate of John R. Jones, a surviving Parent (now deceased) of Donald W. Jones. The Estate of John R. Jones has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

80.   Audrey R. Jones is a surviving Parent of Donald W. Jones. Audrey R. Jones has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

81.   Robert A. Jones is a surviving Sibling of Donald W. Jones.  Robert A. Jones has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

82.   Candy Jones Moyer is a surviving Sibling of Donald W. Jones.  Candy Jones Moyer has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

83.   Dina LaFond is a surviving Parent of Jeanette LaFond-Menichino.   Dina LaFond has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

84.   Anita Korsonsky is a surviving Sibling of Jeanette LaFond-Menichino.   Anita Korsonsky has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

85.    Patricia Caloia is the Personal Representative of the Estate of Emily Lavelle, a surviving Parent (now deceased) of Denis Lavelle.   The Estate of Emily Lavelle has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

86.    Patricia Caloia is a surviving Sibling of Denis Lavelle. Patricia Caloia has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

87.    Barbara Dziadek is a surviving Sibling of Denis Lavelle.  Barbara Dziadek has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

88.    Kathleen Palacio is a surviving Sibling of Denis Lavelle. Kathleen Palacio has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

89.    Paul Lavelle is a surviving Sibling of Denis Lavelle.  Paul Lavelle has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

90.    Barbara Lurman is the Personal Representative of the Estate of Leon Lebor. The Estate of Leon Lebor has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

91.    Barbara Lurman is the surviving Daughter of Leon Lebor.  Barbara Lurman has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

92.    Joy Kaufman a.k.a. Rina Kaufman brings this action as the Personal Representative of the Estate of Bessie Lebor, a surviving Parent (now deceased) of Leon Lebor.  The Estate of Bessie Lebor has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

93.    Joy Kaufman a.k.a. Rina Kaufman is a surviving Sibling of Leon Lebor.  Joy Kaufman a.k.a. Rina Kaufman has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

94.     Stephanie Giglio is a surviving Child of Robert Levine.  Stephanie Giglio has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

95.     Michael A. LoGuidice is the Personal Representative of the Estate of Carmello Joseph LoGuidice, a surviving Parent (now deceased) of Catherine Lisa LoGuidice.  The Estate of Carmello Joseph LoGuidice has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

96.     Joseph Lostrangio, Jr. is a surviving Child of Joseph Lostrangio.   Joseph Lostrangio, Jr. has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

97.     Cathryn Lostrangio is a surviving Child of Joseph Lostrangio.  Cathryn Lostrangio has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

98.     Diane Lostrangio is the Personal Representative of the Estate of James Lostrangio, the surviving Parent (now deceased) of Joseph Lostrangio.  The Estate of James Lostrangio has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

99.     Karen Lunder is the Personal Representative of the Estate of Christopher E. Lunder.  The Estate of Christopher E. Lunder has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

100.     Karen Lunder is the surviving Spouse of Christopher E. Lunder.  Karen Lunder has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

101.     Erich Maerz is a surviving Sibling of Noell Maerz.  Erich Maerz has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

102.     Ramon Melendez, Jr. is a surviving Child of Mary Melendez.  Ramon Melendez, Jr. has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

103.    Tyler Melendez is a surviving Child of Mary Melendez.  Tyler Melendez has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

104.    Ricky Melendez is a surviving Child of Mary Melendez.  Ricky Melendez has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

105.    Jesse Melendez is a surviving Child of Mary Melendez.  Jesse Melendez has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

106.    Florence Rosario is a surviving Sibling of Mary Melendez.  Florence Rosario has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

107.    Margaret Montanez is a surviving Sibling of Mary Melendez.  Margaret Montanez has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

108.    Peter C. Milano is a surviving Child of Peter T. Milano.  Peter C. Milano has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

109.    Jessica Milano Starks is a surviving Child of Peter T. Milano.  Jessica Milano Starks has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

110.    Alfred Milano is a surviving Sibling of Peter T. Milano.  Alfred Milano has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

111.    Frank Milano is a surviving Sibling of Peter T. Milano.  Frank Milano has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

112.    Maureen Racioppi is a surviving Sibling of Peter T. Milano.  Maureen Racioppi has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

113.    Thomas Milano is a surviving Sibling of Peter T. Milano.  Thomas Milano has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

114.    Philomena Mistrulli is the Personal Representative of the Estate of Joseph D.

Mistrulli. The Estate of Joseph D. Mistrulli has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

115.     Philomena Mistrulli is the surviving Spouse of Joseph D. Mistrulli. Philomena Mistrulli has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

116.     Angela Mistrulli is the surviving Child of Joseph D. Mistrulli.  Angela Mistrulli has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

117.     Joseph Mistrulli is the surviving Child of Joseph D. Mistrulli.  Joseph Mistrulli has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

118.     MaryAnn Mistrulli-Rosser is the surviving Child of Joseph D. Mistrulli.  MaryAnn Mistrulli-Rosser has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

119.     John Mistrulli and Maria Lambert are the Co-Executors of the Estate of Anne Mistrulli, a surviving Parent (now deceased) of Joseph D. Mistrulli.  The Estate of Anne Mistrulli has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

120.     Johnny Mistrulli is a surviving Sibling of Joseph D. Mistrulli. Johnny Mistrulli has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

121.     Maria Lambert is a surviving Sibling of Joseph D. Mistrulli.  Maria Lambert has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

122.     Jason Ruben Moreno f/k/a Rolando Ruben Moreno is a surviving Sibling of Yvette Moreno. Jason Ruben Moreno f/k/a Rolando Ruben Moreno has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

123.     Leiana Moreno is a surviving Sibling of Yvette Moreno.  Leiana Moreno has a

judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

124.    Noelia Moreno is a surviving Sibling of Yvette Moreno.  Noelia Moreno has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

125.    Amy Martinez is the Personal Representative of the Estate of Louis Nacke.  The Estate of Louis Nacke has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

126.    Amy Martinez is the surviving Spouse of Louis Nacke.  Amy Martinez has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

127.    Eric Nunez is a surviving Sibling of Brian Nunez.  Eric Nunez has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

128.    Neal Green is a surviving Sibling of Brian Nunez.  Neal Green has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

129.    Theresa Papasso is a surviving Parent of Salvatore T. Papasso.  Theresa Papasso has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

130.    Salvatore Papasso is a surviving Parent of Salvatore T. Papasso.  Salvatore Papasso has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

131.    Vincent Papasso is a surviving Sibling of Salvatore T. Papasso.  Vincent Papasso has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

132.    Joel R. Perry is the Personal Representative of the Estate of James Leslie Perry, a surviving Parent (now deceased) of John Perry.  The Estate of James Leslie has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

133.    Joel R. Perry is a surviving Sibling of John Perry.  Joel R. Perry has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

134.     Janice Perry Montoya is a surviving Sibling of John Perry.  Janice Perry Montoya has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

135.     Anthony M. Hoffman, General Administrator, is the Personal Representative of the Estate of Claudia Stallworth, a surviving Parent (now deceased) of Marsha Ratchford.  The Estate of Claudia Stallworth has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

136.     Reginald Simpson is a surviving Sibling of Marsha Ratchford.  Reginald Simpson has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

137.     Roosevelt Stallworth is a surviving Sibling of Marsha Ratchford.  Roosevelt Stallworth has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

138.     Carl Stallworth is a surviving Sibling of Marsha Ratchford.  Carl Stallworth has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

139.     Cynthia Watts is a surviving Sibling of Marsh Ratchford.  Cynthia Watts has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

140.     Angelia Stallworth-Blunt is a surviving Sibling of Marsha Ratchford.  Angela Stallworth-Blunt has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

141.     Christian B. Stallworth f/k/a Brian Christian is a surviving Sibling of Marsha Ratchford.  Christian B. Stallworth f/k/a Brian Christian has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

142.     Amanda Rogers is a surviving Sibling of Marsha Ratchford.  Amanda Rogers has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

143.    Gary Reiss is a surviving Parent of Joshua Reiss. Gary Reiss has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

144.    Adam Reiss is a surviving Sibling of Joshua Reiss. Adam Reiss has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

145.    Jordan Reiss is a surviving Sibling of Joshua Reiss.  Jordan Reiss has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

146.    Jonathan Reiss is a surviving Sibling of Joshua Reiss. Jonathan Reiss has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

147.    Jennifer Reiss is a surviving Sibling of Joshua Reiss. Jennifer Reiss has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

148.    Diana Diaz is the Personal Representative of the Estate of Carmen Romero, a surviving Parent (now deceased) of Elvin Romero.  The Estate of Carmen Romero has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

149.    Diana Diaz is the Personal Representative of the Estate Isaac Romero, a surviving Parent (now deceased) of Elvin Romero.  The Estate of Isaac Romero has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

150.    Diana Diaz is a surviving Sibling of Elvin Romero.  Diana Diaz has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

151.    Loren Rosenthal is the Personal Representative of the Estate of Evan Rosenthal, a surviving Child (now deceased) of Richard Rosenthal.  The Estate of Evan Rosenthal has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

152.    Loren Rosenthal is the Personal Representative of the Estate of Seth Rosenthal is a surviving Child (now deceased) of Richard Rosenthal.  The Estate of Seth Rosenthal has a

judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

153.    Audrey Model is the Personal Representative of the Estate of Leonard Rosenthal, a surviving Parent (now deceased) of Richard Rosenthal.  The Estate of Leonard Rosenthal has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

154.    Audrey Model is the Personal Representative of the Estate of Florence Rosenthal, a surviving Parent (now deceased) of Richard Rosenthal,.  The Estate of Florence Rosenthal has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

155.    Audrey Model is a surviving Sibling of Richard Rosenthal.  Audrey Model has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

156.    Victor Santillan is a surviving Sibling of Maria Theresa Santillan. Victor Santillan has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

157.    Raymond Santillan is a surviving Sibling of Maria Theresa Santillan.  Raymond Santillan has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

158.    Kirsten Saracini is a surviving Child of Victor Saracini.  Kirsten Saracini has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

159.    Brielle Saracini is a surviving Child of Victor Saracini. Brielle Saracini has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

160.    Lori Brody is a surviving Sibling of Scott Schertzer.  Lori Brody has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

161.    Ellen Schertzer is a surviving Parent of Scott Schertzer.  Ellen Schertzer has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

162.    Roy-Yetkutiel Shefi is a surviving Child of Hagay Shefi.  Roy-Yetkutiel Shefi has

a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

163.    Naomi Ruth Shefi is a surviving Child of Hagay Shefi.  Naomi Ruth Shefi has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

164.    Patricia Sloan is a surviving Parent of Paul K. Sloan.  Patricia Sloan has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

165.    Matt Sloan is a surviving Sibling of Paul K. Sloan.  Matt Sloan has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

166.    Sarah Funk is a surviving Sibling of Paul K. Sloan.  Sarah Funk has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

167.    Raymond Smith is the Personal Representative of the Estate of Marion Thomas, a surviving Grandmother (now deceased) of George Smith. The Estate of Marion Thomas has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

168.    Raymond Smith is the Personal Representative of the Estate of Deborah Sallad, a surviving Sibling (now deceased) of George Smith.  The Estate of Deborah Sallad has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

169.    Carl Smith is a surviving Sibling of George Smith. Carl Smith has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

170.    Kevin Smith is a surviving Sibling of George Smith.  Kevin Smith has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

171.    Korry Smith is a surviving Sibling of George Smith.  Korry Smith has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

172.    Tanya Warren is a surviving Sibling of George Smith.  Tanya Warren has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

173.    Letricia Smith is a surviving Sibling of George Smith. Letricia Smith has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

174.    Elaine Smith is a surviving Sibling of George Smith.  Elaine Smith has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

175.    Christine Jackson is a surviving Sibling of George Smith.  Christine Jackson has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

176.    Barbara Hargrove is a surviving Sibling of George Smith.  Barbara Hargrove has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

177.    Raymond Smith, Jr. is a surviving Sibling of George Smith. Raymond Smith, Jr. has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

178.    Timothy P. Soulas, Jr.  is a surviving Child of Timothy Soulas. Sr.. Timothy P. Soulas, Jr. has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

179.     Andrew J. Soulas is a surviving Child of Timothy Soulas.  Andrew J. Soulas has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

180.    Christopher Soulas is a surviving Child of Timothy Soulas.  Christopher Soulas has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

181.    Matthew Soulas, a surviving Child of Timothy Soulas.  Matthew Soulas has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

182.    Nicole Soulas, a surviving Child of Timothy Soulas.  Nicole Soulas has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

183.    Daniel Soulas, a surviving Child of Timothy Soulas.  Daniel Soulas has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

184.    Frederick Soulas is a surviving Parent of Timothy Soulas.  Frederick Soulas has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

185.    Stephen Soulas is a surviving Sibling of Timothy Soulas. Stephen Soulas has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

186.    Frederick Soulas, III is a surviving Sibling of Timothy Soulas. Frederick Soulas, III has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

187.    Daniel D. Soulas is a surviving Sibling of Timothy Soulas. Daniel D. Soulas has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

188.    Michelle Donlan is a surviving Sibling of Timothy Soulas. Michelle Donlan has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

189.    Darren Steiner is a surviving Child of William Steiner. Darren Steiner has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

190.    Jordan Steiner is a surviving Child of William Steiner. Jordan Steiner has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

191.    Meredith Reverdito is a surviving Child of William Steiner. Meredith Reverdito has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

192.    Robert Steiner is the Personal Representative of the Estate of Wilma Steiner, a surviving Parent (now deceased) of William Steiner. The Estate of Wilma Steiner has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

193.    Robert Steiner is a surviving Sibling of William Steiner. Robert Steiner has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

194.    George M. Steiner is the Personal Representative of the Estate of George W. Steiner, a Sibling (now deceased) of William Steiner.  The Estate of George W. Steiner has a

judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

195.    Kathleen Stergiopoulos is a surviving Sibling of Andrew Stergiopoulos.  Kathleen Stergiopoulos has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

196.    George Stergiopoulos, Jr. is a surviving Sibling of Andrew Stergiopoulos.  George Stergiopoulos, Jr. has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

197.    Aaron Straub is a surviving Child of Edward W. Straub.  Aaron Straub has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

198.    Jonathan Straub is a surviving Child of Edward W. Straub.  Jonathan Straub has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

199.    Michael Straub is a surviving Child of Edward W. Straub.  Michael Straub has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

200.    Samuel Straub is a surviving Child of Edward W. Straub.  Samuel Straub has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

201.    Edward Straub is a surviving Parent of Edward W. Straub.  Edward Straub has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

202.    Stanley Straub is a surviving Sibling of Edward W. Straub.  Stanley Straub has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

203.    Matthew Straub is a surviving Sibling of Edward W. Straub.  Matthew Straub has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

204.    Salvatore Tino, Jr. is a surviving Parent of Jennifer Tino. Salvatore Tino, Jr. has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

205. Jeffrey Tino is a surviving Sibling of Jennifer Tino. Jeffrey Tino has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

206. Salvatore Tino, III is a surviving Sibling of Jennifer Tino. Salvatore Tino, III has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

207. Joseph Nicklo is a surviving Sibling of Jeanmarie Wallendorf. Joseph Nicklo has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

208. Mellanie Chafe is a surviving Sibling of Jeanmarie Wallendorf. Mellanie Chafe has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

209. Christopher Barton is a surviving Sibling of Jeanmarie Wallendorf. Christopher Barton has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

210. John Barton is a surviving Sibling of Jeanmarie Wallendorf. John Barton has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

211. Michael Paige is the Personal Representative of the Estate of Susanne Ward-Baker, a surviving Parent (now deceased) of Timothy Ward. The Estate of Susanne Ward-Baker has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

212. Peter A. McDermott is the Personal Representative of the Estate of Jeanne McDermott, a surviving Sibling (now deceased) of William Wilson. The Estate of Jeanne McDermott has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

213. Debra Zeplin is the Personal Representative of the Estate of Marc Scott Zeplin. The Estate of Marc Scott Zeplin has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

214.    Debra Zeplin is the surviving Spouse of Marc Scott Zeplin.  Debra Zeplin has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

215.    Ryan Zeplin is a surviving Child of Marc Scott Zeplin.  Ryan Zeplin has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

216.    Ethan Zeplin is a surviving Child of Marc Scott Zeplin.  Ethan Zeplin has a judgment against each of the Judgment Debtors, including Iran, the IRGC, and Hezbollah.

## VERIFICATION

Pursuant to Local Admiralty Rule A(5), B(2), and C(1), the undersigned attorney for the Hoglan Plaintiffs identified in Appendix 1 to the Complaint verifies that the allegations in the Complaint are true to the best of my knowledge.  The facts and claims set forth in the Complaint have been alleged after a due diligence investigation into the six vessels that are defendants using numerous sources.  I am authorized to make this representation on behalf of all Hoglan Plaintiffs listed in Appendix 1 to the Complaint.

The sources of information used to support the Complaint's allegations include, but are limited to, the following: (1) the Office of Foreign Assets Control ("OFAC") November 3, 2022 notice designating an international oil smuggling network under Executive Order (E.O.) 13224 as amended by E.O. 13886; (2) the Specially Designated Nationals List published with November 3, 2022 notice; (3) data acquired from Equasis.com, relating to vessel registration, flags, ownership, insurance, classification certificates, and other information; (4) data acquired from the International Maritime Organization public database, relating to vessel registration, IMO Numbers, flags, and ship owner information; (5) interviews with a former naval captain with more than twenty-five years of maritime experience at the national and international levels; (6) interviews with an official responsible for registering, monitoring, and reviewing vessels on behalf of a number of countries; (7) an international ship broker and manager with more than twenty-five years experience in the maritime industry; (8) an international maritime insurance broker; (9) a maritime lawyer with more than twenty-five years of international maritime law experience; (10) individual lawyers in multiple countries concerning the laws, status of company registrations, and status of vessel registrations; (11) investigators verifying information relating to the vessels, their

owners, and their managers; and (12) organizations capable of tracking maritime ship movements using a variety of tracking technologies.

    Executed on April 26, 2024.

By: s/ Stuart H. Singer_____
Stuart H. Singer
Fla. Bar No. 377325
ssinger@bsfllp.com
BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd.
Suite 1200
Fort Lauderdale, FL  33301
Phone: (954) 356-0011
Fax:    (954) 356-0022

*Counsel of Record for Hoglan Plaintiffs*